[Civ. No. 21737. Third Dist. Feb. 14, 1983.]

GERALD F. ALLEN, as County Assessor, etc., Plaintiff and Appellant, v. SUTTER COUNTY BOARD OF EQUALIZATION,
Defendant and Respondent;
JAMES C. VAN DYKE et al., Real Parties in Interest and Respondents.

COUNSEL

Darrell W. Larsen, County Counsel, and Dwaine F. Shields, Deputy County Counsel, for Plaintiff and Appellant.

Rich, Fuidge, Marsh & Morris and John Sanbrook for Defendant and Respondent.

James C. Van Dyke, in pro. per., and Van Dyke, Shaw & Schuckman for Real Parties in Interest and Respondents.

OPINION

**EVANS, Acting P. J.**—Article XIII A, section 1, subdivision (a), of the California Constitution provides: "The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. . . ." Section 2, subdivision (a), provides: "The full cash value means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, *or a change in ownership has occurred after the 1975 assessment. . . .*"[1] (Italics added.) In 1961, real property was placed in an irrevocable trust; in June 1978, the trust terminated and the beneficiaries took legal title. The question is whether the termination of the trust constituted a "change in ownership" under section 2, subdivision (a), so that the property must be reassessed. We conclude there was no "change in ownership."

---

[1]Article XIII A was adopted June 6, 1978, with passage of Proposition 13.

In December 1961, D. C. and Bessie Van Dyke conveyed real property to their son, Harlan, as trustee for their four grandchildren. The trust was irrevocable, and provided that the property was to "be divided into four (4) equal undivided parts, . . ." Until each beneficiary reached the age of 21, income was to be accumulated or paid to each "in amounts and at times as the Trustee shall in his sole discretion deem advisable." Once each beneficiary reached 21, the trustee was required to pay the beneficiary his or her share of the income until he or she attained the age of 25. At that time the trustee was directed to distribute to each his or her share of the trust estate.

The trust also provided that if any beneficiary were to die before the age of 25, the trustee was to distribute the balance of that beneficiary's share to his or her surviving issue. Absent issue, the balance was to be "added equally to the shares of the trust estate set aside for the benefit of the remaining beneficiaries, . . ." If all beneficiaries died before final distribution, then at the death of the last survivor all of the estate not then disposed of was to be distributed to the trustee's heirs at law.

The trustee was given various other powers, including the power to lease, encumber, or sell the land.

On June 13, 1978, the youngest grandchild having attained the age of 25, the trustee conveyed the property by grant deed to the four grandchildren as tenants in common.

Upon recordation of this deed, plaintiff, the Sutter County Assessor, reassessed the property for the 1978-1979 tax year, and increased the value from $201,204 to $308,000, on the theory that termination of the trust constituted a "change in ownership" under article XIII A. In September 1979, real party in interest, one of the grandchildren, applied to the Sutter County Board of Equalization (Board) to have the assessment reduced to its original figure. After holding several hearings throughout 1980, the Board granted real party in interest's application. Plaintiff sought relief in superior court and was denied. This appeal followed.

The question of the meaning of the words "change in ownership" under article XIII A, section 2, is crucial. As the Assembly Revenue and Taxation Committee has noted: "Of the three value 'benchmarks' under Proposition 13— 1975 base values, change in ownership, and new construction—change in ownership is by far the most critical. . . . [A]fter 1978 the lion's share of the growth in the property tax base will be triggered by, and dependent on, change in ownership." (Assem. Rev. & Tax. Com., Property Tax Assessment (Oct.. 29, 1979) p. 18 (hereafter Assembly Report).)

■ Looking at the structure and effect of the present trust, we are compelled to the conclusion that termination did not constitute a "change in ownership." In 1961 when the trust was created, a "change in ownership" took place. The trustee received legal title to the property; he subsequently transferred this legal title to the beneficiaries in 1978. ■ However, it is a rudimentary principle of trust law that the creation of a trust divides title—placing legal title in the trustee, and *equitable* title in the beneficiaries. (*Gonsalves* v. *Hodgson* (1951) 38 Cal.2d 91, 98 [237 P.2d 656]; Rest.2d Trusts, § 2, com. f, p. 9.) ■ From 1961 the grandchildren enjoyed equal equitable interests in the property: they received payments of income, or income was accumulated for them, until age 21; they had a right to income payments after age 21; indeed, they had the right, through a parent or guardian, to demand their share of the principal at any time. In addition, the trial court found that as "a factual matter" the beneficiaries had "the complete and total use of that property for their own benefit, for the benefit of no one else," from 1961. In effect, the only real change in 1978 was in the name of the holder of legal title. The beneficial ownership remained the same.

Plaintiff finds it significant that, technically speaking, the trust created only contingent interests, and that the property would pass by intestacy if each beneficiary died without issue. This is true, but irrelevant. The point is that these four beneficiaries were in fact the beneficial "owners" of the property in 1961, and, because they *did* survive, are still the owners today. Plaintiff also refers us to Civil Code section 863,[2] arguing that as a consequence the beneficiaries had no interest in the property until the trust terminated. However, section 863 does not negate the fundamental basis of a trust—that it conveys an equitable interest in the trust estate. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 56, pp. 5418-5419.)

Since passage of Proposition 13, the Legislature has developed a definition of "change in ownership" which supports our conclusion that there is no change in ownership in this instance.

A short history of the legislative effort is helpful.[3] Proposition 13 was approved by the voters on June 6, 1978, to become effective July 1. The proposition did not define "change in ownership." In the three short weeks before the

---

[2]Section 863 provides: "Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust."

[3]For a summary, see Assembly Report, pages 6-8; Ehrman & Flavin, Taxing California Property (2d ed. 1979) sections 2.7, 2.11; Supplement (1980) sections 2.7A, 2.11; Pope & Ajalat, *Proposition 13 Section 2(a): Base years, changes of ownership and new construction* (1979) 54 State Bar J. 494, 495-496.

effective date, the Legislature quickly drafted and enacted a series of bills designed in part to define this important term. The resulting statute (former Rev. & Tax. Code, § 110.6) presented a broad definition of "change of ownership."[4] Recognizing that this was but a hurried, initial response to the problem, the Legislature provided that the definition would only apply to assessments for the 1978-1979 tax year. (See Stats. 1978, ch. 332, § 26, p. 701; *Taxation* (1979) 10 Pacific L.J. 573, 577.)[5]

After that first effort, a task force was appointed to develop more comprehensive definitions for the 1979-1980 tax years and beyond. In January 1979, the task force submitted a lengthy report and recommendations. (Assem. Rev. & Tax. Com., Rep. of Task Force on Property Tax Administration (Jan. 22, 1979) (hereafter Task Force Report).) The task force's recommendations are embodied in sections 60 to 67 of the Revenue and Taxation Code.[6]

Strictly speaking, Revenue and Taxation Code sections 60 to 67 are not applicable inasmuch as this appeal involves an assessment for the 1978-1979 tax year; the Legislature declined to make sections 60 to 67 retroactive to that tax year, for fear that to do so would compel the state to refund taxes already collected in 1978-1979 under the broader definition established by former section 110.6. (Assembly Report, pp. 36-37; Stats. 1979, ch. 242, §§ 41, 43, pp. 526, 527.) Former section 110.6 was a hastily enacted attempt at a definition; it is arguably so broad as to raise constitutional problems if literal applications were to be attempted. (See Ehrman & Flavin, *op. cit. supra,* § 2.11.) Sections 60 to 67 represent a more thoughtful, cogent attempt at definition by the Legislature, and are helpful in arriving at our conclusion.

Section 60 sets out a basic definition of "change in ownership." It provides: "A 'change in ownership' means a transfer of a present interest in real proper-

---

[4]Former Revenue and Taxation Code section 110.6 provided in part: "The Legislature finds and declares that a change in ownership of real property means all recorded and unrecorded transfers of legal or equitable title, except the transfer of bare legal title, whether by grant, gift, devise, inheritance, trust, contract of sale, addition or deletion of an owner, property settlement, or any other change in the method of holding title, whether by voluntary or involuntary transfer or by operation of law. . . ." (Stats. 1978, ch. 332, § 26, p. 701.)

[5]Under authority of section 110.6, the State Board of Equalization (State Board) adopted a set of rules in an effort to particularize the statutory definition. These rules began as broad statements, but in succeeding weeks became more refined and detailed. (See former Cal. Admin. Code, tit. 18, § 462, Cal. Admin. Register 78, Nos. 27, 40, and 43.)

[6]With the enactment of sections 60 to 67 of the Revenue and Taxation Code, the State Board repealed its former rules and filed new rules, which have continued to undergo expansion and refinement. (See former Cal. Admin. Code, tit. 18, § 462, Cal. Admin. Register 79, Nos. 34 and 49; current § 462, Cal. Admin. Register 82, No. 20.)

ty, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." Section 61 iterates nine specific instances that are intended to be included in the definition of "change in ownership." Section 62 defines 11 specific exclusions from that definition. The basic definition of section 60 is intended as a guidepost in cases not covered by the specific inclusions or exclusions. (Assembly Report, p. 19.)

Under section 60 three elements are required to effect a change in ownership: (1) transfer of a present interest in real property, (2) transfer of the beneficial use of the property, and (3) transfer of property rights that are substantially equivalent in value to the fee interest. (Task Force Report, p. 38.) In the case of a trust, as here involved, not all of the criteria required to constitute a change in ownership are present. There was no transfer of the beneficial use of the property when the trust terminated. Beneficial use of the property was transferred to the beneficiaries at the *creation* of the trust, and remained there.[7]

Additionally, under the current rules of the State Board, the termination of this trust would not constitute a "change in ownership."

California Administrative Code, title 18, section 462, subdivision (i), provides: "(i) Trusts . . . . [¶] (4) Exceptions. A transfer resulting from the termination of a trust is not a change in ownership if: . . . (E) Proportional Interests. Termination results in the transfer to the beneficiaries who receive the same proportional interests in the property as they held before the termination of the trust."

Plaintiff's final argument that the termination constituted a "change of ownership" under subdivision (f) of section 61, assumes the trustee's interest in the present property is similar to a life tenant's interest in a life estate. The interests are not analogous. A life tenant has a legal and beneficial interest or title during his life. (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, §§ 193-199, pp. 1931-1936.) There is a "change in ownership" when he dies. Legal and beneficial title then transfers to another. By contrast, the trustee holds legal title only, while beneficial and equitable interest is vested in the beneficiaries; the trust is merely a conduit for the intended initial title transfer established with the creation of the trust.

---

[7]The task force gives the following illustration: "A father buys land for his minor son, taking title as custodian for the son. There *is* a change in ownership when the father buys the property, however, when the son reaches majority and gets the property outright there is no change in ownership. Why? The father never had the beneficial use of the property. The son was the real owner from the outset and when he reached majority there was no transfer of the beneficial use." (Italics in original; Task Force Report, p. 39.)

The judgment is affirmed.

Blease, J., and Carr, J., concurred.