[No. F002497. Fifth Dist. Dec. 16, 1983.]

CAROLYN JEAN PEARCE, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
BERRY HOLDING COMPANY et al., Real Parties in Interest.

**COUNSEL**

Brobeck, Phleger & Harrison, Harold Marsh, Jr., Richard S. Odom, John J. Wasilczyk, Steven C. Keller, Anderson & Anton, Thomas J. Anton, Jay C. Smith and Donald R. Prinz for Petitioner.

No appearance for Respondent.

Mitchell, Silberberg & Knupp, Edward M. Medvene, Russell J. Frackman, Peter B. Gelblum, Richard M. Mosk, Borton, Petrini & Conron, Clifford, Jenkins & Brown, Stephen T. Clifford, Bronson, Bronson & McKinnon, Frederick S. Fields, Denis F. Shanagher, McCormick, Barstow, Sheppard, Wayte & Carruth, Oliver W. Wanger, D. Greg Durbin, Simon & Sheridan, Thomas R. Sheridan and Michael R. Rogers for Real Parties in Interest.

**OPINION**

**WOOLPERT, J.**—In this extraordinary proceeding we review facts which the judge below has described as setting "the stage for a perfect corporate soap opera." He summarized the scenario as follows: "Plaintiff filed her derivative action on behalf of herself and all other 'shareholders' of Berry Holding Company. She seeks recovery for the corporation and tells a tale of corporate mismanagement, disloyalty, and abuse which takes up sixty[-]five (65) pages, lists twelve (12) causes of action, and the list of defendants

alone takes up nearly one and one-half (1½) pages of her Second Amended Complaint. . . . Her seriousness and commitment to save the corporation is evidenced by the fact that three (3) complaints were filed within a span of ten (10) weeks. The cast of characters include the corporation, directors, officers, employees, attorneys, partnerships and testamentary trustees.

"Berry Holding Company is a closed [*sic*] corporation whose 'C' stock is held by seven (7) families, many by way of trusts, which are all descendants of Clarence C. Berry, the corporation's founder. Plaintiff Pearce is the daughter of William E. Bush, one of the descendants of Clarence Berry. She is, at present, an income beneficiary and a contingent beneficiary of the corpus of a trust, which, *at this time,* is composed in large part of Berry Holding stock, pursuant to the provisions of her deceased father's testamentary trust." (Original italics.)

We will recount additional facts as they become relevant. Our single issue, which arose at the very start of this already complex litigation, may be stated by making a comparison. In California the record owner of only one share of corporate stock has standing to bring a shareholders derivative suit on behalf of the corporation. In contrast, the defendants herein contend that petitioner (plaintiff), a trust beneficiary whose beneficial interest in the corporation generated over $70,000 income last year, has no standing because the corporate stock is registered in the name of the testamentary trustees.

Defendant's contention has an added feature which suggests that plaintiff must first go to the probate court and clear the air so that either the trustees bring the action or she is substituted for that purpose. As a result of the skirmishes below, the parties have made a number of trips between the courtrooms of the probate commissioner and the civil law and motion judge. We decide that this has been unnecessary because plaintiff has sufficient standing as a beneficial owner of shares.

This case reaches the court on a petition for an alternative writ of mandamus ordering the Superior Court of Kern County to vacate its order which sustained the demurrers of all the defendants, without leave to amend, on the ground that the plaintiff has no standing under section 800 of the Corporations Code.[1] The petition further requests that the defendants' demurrers be overruled, that proceedings in a related case in the Kern County Probate Court be stayed, and that an order staying all further proceedings in this derivative suit be vacated.

On June 23, 1983, all parties were directed by this court to file supplemental letter briefs addressing specific issues. An order to show cause was

---

[1] All statutory references are to the Corporations Code unless otherwise indicated.

then issued by this court directing defendants to show why the relief prayed for should not be granted.

### ADDITIONAL FACTS

As noted above, the Berry Holding Company (BHC) is a closely held California corporation whose shares are evenly distributed among seven related families that are descendants of the founder of the company and his wife. One of the seven families is that of William E. Bush, deceased, plaintiff's father. At his death, Bush placed his shares in the testamentary trust.

Under the terms of the trust, all income is to be paid to the surviving wife until she dies or remarries. If she remarries, the trustees are to pay her as much money as she needs to prevent her living under conditions of hardship or need. The balance of the income is to be paid to the children as they reach 21. Upon the death of Mrs. Bush, an event which has not yet occurred, the trustees are directed to terminate the trust and divide the corpus equally among those of Bush's four children who survive Mrs. Bush, and have reached the age 21. Plaintiff is one of those children and has reached 21 years of age; her mother is alive and has remarried. It is alleged that plaintiff beneficially owns 25,000 shares of BHC, or approximately a 3.125 percent interest.

The trust corpus is almost exclusively BHC stock. All the defendants in this action have become such due to their relationship to BHC. Defendants include past and present BHC officers and directors, its accounting firm, its law firm, as well as various subsidiaries. The causes of action the plaintiff claims BHC has against these defendants vary, depending on the party charged. Generally, the charges revolve around conflicts of interest, self-dealing, usurpation of corporate privilege, malpractice, et cetera. A comprehensive statement of the facts is alleged in the complaint. Plaintiff's derivative action is an attempt to recoup, on behalf of BHC, some of the alleged losses BHC has suffered at the hands of these defendants.

### THE PETITION PRESENTS THE EXTRAORDINARY CIRCUMSTANCES REQUIRED FOR THE ISSUANCE OF A WRIT OF MANDATE.

While some of the real parties in interest continue to address the question of the appropriateness of mandamus in this case, that question is no longer at issue. An alternative writ was issued by this court in the form of an order to show cause. ■ Where an alternative writ has issued, it can be implied that the appropriateness of mandamus is no longer at issue and that the court will proceed to the merits of the petitioner's case. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487

P.2d 1193].) As one authority has noted, this is "a positive rule, expressed in terms almost of res judicata, that the issuance of an alternative writ was a determination of inadequacy of other remedy which took the issue out of the case when the time for determination arrived." (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 94, p. 3870.)

### PLAINTIFF HAS STANDING UNDER CORPORATIONS CODE SECTION 800.

Corporations Code section 800, subdivision (b), and the pertinent part of subdivision (b)(1) are set out as follows: "(b) No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares or of voting trust certificates of the corporation unless both of the following conditions exist:

"(1) The plaintiff alleges in the complaint that plaintiff was *a shareholder, of record or beneficially,* or the holder of voting trust certificates at the time of the transaction . . . ." (Italics added.)

The controversy in this issue revolves around the statutory language "plaintiff was a shareholder, of record or beneficially."

Plaintiff maintains that "shareholder . . . beneficially" is merely a shorter way of saying "holder . . . of a beneficial interest in such shares." The latter language is from New York Business Corporation Law, section 626, subdivision (a). New York was one of the jurisdictions that the California Legislative Committee referred to in revising the California Corporations Code. (Rep. of the Assem. Select Com. on the Rev. of the Corp. Code, appen. at p. 9 (1975) hereafter cited as Rep. of Assem. Select Com.) The New York courts have allowed trust beneficiaries to bring derivative actions since the passage of the New York statute.[2] The trial court considered the legislative reference to the New York statute but found plaintiff's reliance on it unpersuasive.

There are no California decisions interpreting the term "beneficial shareholder" as used in section 800, subdivision (b)(1). At the time section 800, subdivision (b), was drafted, however, there existed a California regulation that expressly defined "owned beneficially" as used in a different section of the Corporations Code. That definition included trust beneficiaries. Section 25102, subdivision (h), provides an exemption for the issuance and sale

---

[2]*Sasso* v. *Gallucci* (1982) 112 Misc.2d 865 [447 N.Y.S.2d 618]; *Stephenson* v. *Landegger* (S.D.N.Y. 1971) 337 F.Supp. 591, affd. (2d Cir. 1971) 464 F.2d 133, cert. den. (1972) 409 U.S. 1039 [34 L.Ed.2d 488, 93 S.Ct. 520]; *Schlegel* v. *Schlegel Manufacturing Corp.* (1965) 23 App.Div.2d 808 [258 N.Y.S.2d 587].

of certain securities. The Commissioner of Corporations issued a regulation defining the scope of the exemption. That regulation provides as follows: "(a) Securities held by a partnership or joint venture shall be considered to be owned beneficially by each of its partners or joint venturers and *securities held by a trustee shall be considered to be owned beneficially by each of the beneficiaries, present, future, and contingent of the trust. . . .*" (Cal. Admin. Code, tit. 10, § 260.102.5, italics added.)

Section 800, subdivision (b), was enacted in 1975. It is assumed the Legislature was aware of the Administrative Code definition. In the absence of contrary evidence we presume it intended to maintain a consistent body of rules. (*Consumers Union of U.S., Inc.* v. *California Milk Producers Advisory Bd.* (1978) 82 Cal.App.3d 433, 446 [147 Cal.Rptr. 265]; *Jacobs* v. *State Bd. of Optometry* (1978) 81 Cal.App.3d 1022, 1031 [147 Cal.Rptr. 225].) The trial court considered this argument but narrowly construed the language, confining it to section 25102, subdivision (h). Although a broader application may not have been intended, the regulation reflects a common understanding of the meaning of the words. Black's Law Dictionary (4th ed. 1968) page 199, defines "beneficial interest" to mean: "Profit, benefit, or advantage resulting from a contract, or the ownership of an estate as distinct from the legal ownership or control." The American Heritage Dictionary of the English Language (New College Ed. 1981) page 123, defines "beneficial" as "2. *Law.* Receiving or having the right to receive proceeds or other advantages: *a beneficial interest in sales.*" (Original italics.)

The phrases "equitable estate" and "beneficial interest" are often used interchangeably. Courts are faced with numerous variations of present and future beneficial interests. After quoting from Pomeroy and judicial precedent, one court expressed a disinterest in carrying the discussion further. We quote: "Harry Duffill was vested with an equitable estate and beneficial interest in his mother's property immediately upon her death, with only such legal title lodged in the Los Angeles Trust and Savings Bank as is required for the execution of the testamentary trust. . . . Whatever may be the duration or quantity of the equitable estate vested in Harry, whether for years or for life, or in mere expectancy, he has received, and is receiving income thereon. What condition will prevail when the testamentary trust is terminated by lapse of time or death does not now concern us. . . ." (*Title Ins. & Trust Co.* v. *Duffill* (1923) 191 Cal. 629, 649 [218 P. 14].)

Without elaboration, another court merely stated the commonplace: "[T]he beneficial owners of the stock of the corporation in this case were the beneficiaries of the three trusts." (*Estate of Feraud* (1979) 92 Cal.App.3d 717, 723 [154 Cal.Rptr. 889].) For a recent similar view, see

*Allen* v. *Sutter County Bd. of Equalization* (1983) 139 Cal.App.3d 887 [189 Cal.Rptr. 101]. We too are aware of no definitional reason to restrict "shareholder . . . beneficially."

Plaintiff further urges a liberal and expansive reading of section 800 and the phrase "shareholder . . . beneficially" would be consistent with the modern judicial and legislative trend in this state and nationwide. We agree. In 1949 the predecessor to section 800, section 834, was made extremely restrictive in its grant of standing. Section 834, subdivision (a)(1), expressly required that the party bringing suit be a shareholder at the time of the alleged wrong. This is known as the contemporaneous ownership rule.

The 1949 legislation resulted from a nationwide effort "to protect corporations, their directors, officers and employees against so-called 'strike suits' and the litigation expenses which may be unjustifiably foisted upon them." (Ballantine, *Abuses of Shareholders Derivative Suits: How Far is California's New "Security For Expenses" Act Sound Regulation?* (1949) 37 Cal.L.Rev. 399 (hereafter cited as Ballantine, *Derivative Suits*).)

Professor Ballantine, at the time the preeminent California authority on corporation law, appeared to approve the effort to curtail "strike suits." However, he believed the contemporaneous ownership rule "to be an unfortunate change in the existing law." (Ballantine, *Derivative Suits, supra,* at p. 415.) Years later, in 1975, the Legislature relaxed this rule, giving standing in certain circumstances in which the shares were acquired prior to disclosure of the alleged wrongdoing. (Corp. Code, § 800, subd. (b)(1).)

Ballantine noted the statutory changes in various states, including the requirement in other states that a security bond need be posted only if the shareholder owns less than a certain percentage of the corporate shares. This bonding requirement is the device which is supposedly adequate to protect against strike suits and to insure that the plaintiff has a bona fide interest in the derivative action, thereby discouraging the relatively small investor from nuisance suits. (*Shielcrawt* v. *Moffett* (1945) 294 N.Y. 180, 190 [61 N.E.2d 435, 439-440, 159 A.L.R. 971].) California's variation, section 834, subdivision (b), provided for a preliminary inquiry, after defense motion for a bond, directed to reasonable probabilities that the litigation will benefit the corporation. No exception was made for major shareholders.

Ballantine expressed a word of caution which we assume was noted when the 1975 changes were made in California. He concluded:

"Shareholders' suits have been much less numerous in California than in New York and some other eastern states. Abuses of such suits, if any, have

not yet come to public notice. Experience elsewhere indicates that it is a prudent precaution to attempt some reasonable regulation to prevent strike suits. Great evils, however, will result if undue obstacles are placed in the path of a shareholder who has legitimate grounds for suing. The derivative action is practically the only remedy for calling the management to account for its wrongs against the corporation and to obtain restitution. Where a derivative suit is against outsiders for wrongs against the corporation the directors can usually be expected to decide impartially on the advisability of suing. But the management cannot be expected to sue themselves for their own misdeeds. By such wrongs the value of each shareholder's shareholdings will be depreciated and impaired to a greater or less extent, but ordinarily he cannot bring a direct action against the wrongdoers for his individual damages for what are regarded, to avoid multiplicity of suits and for the protection of creditors, as wrongs against the corporation.

"The California statute does not put a complete stop to a derivative suit even if the defendants succeed in showing a probability that it is not for the benefit of the corporation. It only imposes the risk of loss of the defendants' litigation expenses upon the plaintiff in event of his failure in whole or in part. It does not provide for a motion for dismissal or summary judgment.

"As the United States Supreme Court has held, the state legislatures have a wide and flexible power of regulation of derivative suits. But it is a fundamental policy of the law and duty of government that some remedy must be provided for every recognized wrong." (Ballantine, *Derivative Suits, supra,* pp. 416-417, fns. omitted.)

More pertinent to our issue, Ballantine noted another change resulting from the 1949 legislation: "The California act has indeed introduced a disqualification which, in one respect, goes even beyond that of New York, New Jersey, Delaware and the Federal Rule, in that it requires that the plaintiff be a 'registered shareholder' in order to sue. In the federal courts and in New York, New Jersey and other jurisdictions generally, it is sufficient that the plaintiff be an equitable shareholder or unregistered owner of shares. This has been the doctrine in California going back to 1871." (*Id.,* at pp. 415-416, fn. omitted.)

Part of the 1975 liberalization of the standing requirements was the inclusion of the phrase "shareholder . . . beneficially" in section 800. Under section 834, subdivision (a)(1), the plaintiff must have been "a member, registered shareholder or the holder of voting trust certificates at the time of the transaction," while section 800, subdivision (b)(1), provides that the plaintiff must allege that he was "a shareholder, of record or beneficially,

or the holder of voting trust certificates at the time of the transaction." Clearly the category of shareholder was expanded with this new language.

In addition, we note that courts in California have historically given derivative suit standing requirements a liberal construction. While no such case exists yet for section 800, under the restrictive language of section 834 the California Supreme Court twice allowed derivative actions to proceed in which the plaintiffs did not meet the literal requirement that they be "either a member, registered shareholder or the holder of voting trust certificates." (*Reed* v. *Norman* (1957) 48 Cal.2d 338, 342 [309 P.2d 809]; *Weingand* v. *Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806, 818 [83 Cal.Rptr. 650, 464 P.2d 106].) We assume that section 800's new contemporaneous ownership rule is a codification of these decisions, and coincides with the Ballantine point of view mentioned above. (*Perry* v. *Jordan* (1949) 34 Cal.2d 87, 93 [207 P.2d 47].)

Defendants and the court below have spent considerable time comparing various trust relationships in an effort to show that plaintiff has a relatively insignificant status which in no way approaches the equivalent of full ownership, whether legal or equitable. We do not find this to be a productive analysis. Irrespective of the uncertainties involved in such testamentary trust dispositions, plaintiff is a recipient of substantial income which depends upon the well-being of the corporation.

We have been provided no legislative history which would support the conclusion that only a 100 percent equitable owner, or the beneficiary of a passive rather than active trust, would have appropriate standing. The Legislature has shown no interest in whether the shareholder owns one of a million, or half of, the shares of a corporation. No quantitative qualification of "beneficially" is found in the statute.[3]

Defendants rely heavily upon a legislative committee comment to section 800. They argue that the Legislature intended to grant beneficial ownership standing only to those persons whose interest is nearly the same as a record owner. The language of the comment, in pertinent part, is as follows: "Subdivision (b) also expressly authorizes a beneficial owner of shares to bring a derivative action since such a person's *interest in the share is essentially the same as that of a record owner.*" (Rep. of Assem. Select Com. at p. 89;

---

[3]*Ballantine refers to New York and California as states having permitted the owner of "a single share of stock out of 6,000,000 or more" to bring shareholders derivative actions without personal risk except the traditional court costs allowed by law. He then notes the legislative solution of 1949, the security bond requirement. (Ballantine, Derivative Suits, supra, p. 401.)*

see also legis. committee com., West's Ann. Corp. Code, § 800 (1977) p. 433; Deering's Ann. Corp. Code, § 800 (1977) p. 58, italics added.)

The crux of this argument rests primarily with the impact of the words "interest . . . is essentially the same" on the section 800 language "shareholder, of record or beneficially." Defendants note that Ballantine and Sterling use street name ownership as the only example of beneficial ownership. (1A Ballantine & Sterling, Cal. Corporation Laws, Contemporaneous Ownership Requirement (4th ed. 1981) § 292.02 [1][a].) In addition, Fletcher's treatise uses stock held in a customer's margin account with a broker as its only example of beneficial ownership. (13 Fletcher, Cyclopedia of The Law of Private Corporations (1980) Stock and Stockholders, § 5976, at p. 457.) Neither of these authorities are dispositive, however. A close reading of Ballantine and Sterling shows that they *intended* to list but one example, and that they in no way intended street name ownership to be the only beneficial interest to which section 800 would apply. Fletcher does not specifically refer to section 800, but rather discusses cases from states where a statute granting derivative suit standing to a beneficial owner of stock does not exist.

The committee comment may be no more than an observation that a beneficial owner's interest in the *corporation* is essentially the same as a record owner. Defendants' narrow construction of the words "interest in the share" is inconsistent with the concerns expressed by Ballantine, and disregards the obvious fact that the owner of minor, or remote, equitable interests must satisfy the bonding requirements, just as in the case of the record owner of only a single share. The impact on the corporation is no greater in one case than the other.

We reject a narrow construction of the word "beneficially." ■ "It is axiomatic that the interpretation of a statute where the language is clear, its plain meaning should be followed." (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) Defendants present no compelling reason to depart from the clear meaning of the word. Furthermore, "[w]hen the legislative history thus gives rise to conflicting inferences, it does not justify departing from the plain language of the statute." (*People* v. *Boyd* (1979) 24 Cal.3d 285, 295 [155 Cal.Rptr. 367, 594 P.2d 484].)

Although this preliminary skirmish portends substantial financial rewards to numerous counsel, we should not lose sight of the purpose of a shareholders derivative action. Quoting from Pomeroy, the court in *Whitten* v. *Dabney* (1915) 171 Cal. 621, 630 [154 P. 312], emphasized the supposedly impersonal position of the plaintiff: " 'The stockholder does not bring such

a suit because *his* rights have been *directly* violated, or because the cause of action is *his* or because *he* is entitled to the relief sought. He is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.*' " (Original italics.)

However impartially she views the supposedly neutral position she has volunteered to take, and however great the hostility her action brings, the law merely requires that plaintiff was the owner of a shareholder's beneficial interest in the corporation when the alleged transactions took place. Having standing as a nominal plaintiff, the orders sustaining the demurrers below which denied her such standing must be vacated.

Let a writ of mandate issue directing the Superior Court of Kern County to vacate its order of March 10, 1983, and modification thereof on March 24, 1983, granting defendants' demurrers and staying further proceedings in action No. 178653 and to enter a new order overruling said demurrers. Insofar as it seeks relief not granted above, the petition for writ of mandate is denied.

Brown (G.A.), P. J., and Zenovich, J., concurred.

A petition for a rehearing was denied January 11, 1984, and the petition of certain real parties in interest for a hearing by the Supreme Court was denied February 29, 1984. Mosk, J., did not participate therein.