[No. B095651. Second Dist., Div. Seven. Apr. 17, 1996.]

EMPIRE PROPERTIES, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

De Witt W. Clinton, County Counsel, and Albert Ramseyer, Deputy Counsel, for Defendants and Appellants.

Harry A. Olivar for Plaintiff and Respondent.

## OPINION

JOHNSON, J.—Taxpayer brought suit to seek a refund of property taxes. It claimed the property was exempt from reassessment under Revenue and Taxation Code section 63.1 as the transfer was between a parent and his children. The trial court found for the taxpayer.

The County of Los Angeles (County) appeals from the judgment and asserts numerous bases why the judgment is erroneous as a matter of law. It claims a "change of ownership" in the real property occurred at the father's death in 1987 and this event triggered the three-year statute of limitations for claiming a parent/child exemption. Thus, the County argues the taxpayer's claim for an exemption from reassessment on the real property based on the parent/child exemption filed in 1991, and more than four years after the father's death, was untimely. In addition, the County claims the taxpayer is not entitled to a refund because it never actually filed a claim for refund. The County also claims this action is invalid because the parent/child exemption from reassessment is only available for transfers of real property between natural persons, and in this case the transferee is a legal entity and not a natural person.

We conclude a "change in ownership" occurred at the father's death in 1987, and not at the time the real property was transferred into the parents' revocable trust in 1975, as found by the trial court. We therefore further conclude the taxpayer's 1991 claim for exemption under the parent/child exclusion was untimely and reverse the judgment in favor of the taxpayer. Consequently, we need not reach the other issues the county raises.

### FACTS AND PROCEEDINGS BELOW

In 1975 Hyman J. Shulman and his wife Rose Shulman established a revocable inter vivos trust known as the Shulman Family Trust. Rose Shulman died in 1984. According to the allegations in the verified complaint, at his wife's death, Hyman Shulman, as trustee of the trust, became

the "sole legal and equitable owner" of a parcel of real property located at 350 East California in Pasadena. This parcel of real property is improved with a 60-unit apartment building. The trust instrument was not introduced into evidence and was not made part of the record on appeal, but apparently the Shulmans' daughters, Evelyn Levitt and Jean Abarbanel, were residuary beneficiaries of the revocable inter vivos Shulman Family Trust.

In August 1987, Levitt and Abarbanel formed respondent, Empire Properties (Empire), a general partnership, to hold title to and to manage approximately 18 income properties to be distributed from the Shulman Family Trust. On October 5, 1987, Hyman Shulman died. The Shulman Revocable Family Trust became irrevocable upon his death. Levitt and Abarbanel and their husbands became successor trustees of the Shulman Family Trust.

In February 1990, the County mailed Empire a notice of assessed value change based on Hyman Shulman's death in October 1987.

After some delay due to an audit of the federal estate tax return and a family dispute over the distribution of assets, on November 22, 1991, the trustees of the Shulman Family Trust transferred title to the properties held by the trust to Empire.

On the same day, November 22, 1991, Empire filed a claim for a reduction of the assessment on the 350 California real property in Pasadena. It claimed the real property was exempt from reassessment based on the parent/child exclusion passed by the voters as Proposition 58 in November 1986.

The county assessor denied Empire's claim for exemption. The reason cited for denial was the three-year statute of limitations for filing such claims had expired in October 1990, or three years after Hyman Shulman's death. Empire sought review with the County Assessment Appeals Board which also denied the claim.

On April 21, 1994, Empire brought suit seeking a refund of property taxes. The County demurred to the complaint, claiming Empire's claim for a parent/child exclusion from reassessment was untimely because it was filed more than four years after Hyman Shulman's death. The trial court overruled the demurrer, reasoning beneficial interest in the property did not vest in Empire until the deed transferring title from the Shulman Family Trust to the partnership was recorded in November 1991. Based on this reasoning the trial court found Empire's claim for exemption timely.

Trial was to the court which found in favor of Empire, but for reasons different than those employed in its earlier analysis in ruling on the County's

demurrer. This time the trial court concluded the "change in ownership" occurred when the real property was originally transferred into the trust in 1975. Based on this analysis the court found that because Empire's partners were beneficiaries of that trust created in 1975, no change in beneficial ownership occurred, either in 1987 at Hyman Shulman's death, or when the trustees transferred the property to Empire. Following this reasoning, the trial court concluded Empire was entitled to a refund of taxes erroneously assessed since Hyman Shulman's death.

The County appeals from the judgment.

## DISCUSSION

The question when a "change in ownership" occurred so as to trigger the reassessment mechanisms of Proposition 13 is a question of law. (*Shuwa Investments Corp.* v. *County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1644 [2 Cal.Rptr.2d 783]; *Penner* v. *County of Santa Barbara* (1995) 37 Cal.App.4th 1672, 1676 [44 Cal.Rptr.2d 606].) We independently review the trial court's legal conclusions. (*Pueblos Del Rio South* v. *City of San Diego* (1989) 209 Cal.App.3d 893, 899 [257 Cal.Rptr. 578]; *Penner* v. *County of Santa Barbara* , *supra*, 37 Cal.App.4th 1672, 1676.)

I. *A Change in Ownership Occurred When the Revocable Shulman Family Trust Became Irrevocable at Hyman Shulman's Death in October 1987.*

Article XIII A, section 1 of the California Constitution limits the maximum amount of any ad valorem tax on real property to one percent of the full cash value of that property. This article was part of Proposition 13 added to the Constitution by vote of the people on June 6, 1978. It limits the assessed value of real property for ad valorem tax purposes to that shown on the 1975-1976 tax bill or to its "appraised value . . . when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment." (Cal. Const., art. XIII A, § 2, subd. (a).)

Revenue and Taxation Code section 60 defines a "change in ownership" as "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest."[1]

The Legislature added section 61 to define the circumstances constituting a "change in ownership." As relevant to this case, a "change in ownership"

---

[1]All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

occurs when "[a]ny interests in real property which vest in persons other than the trustor (or, pursuant to Section 63 [interspousal transfers], his or her spouse) when a revocable trust becomes irrevocable." (§ 61, subd. (g).)

This definition is further clarified to emphasize it is the transfer of the present use and beneficial interest in property essentially equivalent to a fee interest which constitutes a change in ownership for purposes of reassessment. Title 18, section 462.001 of the California Code of Regulations provides: "(a) There shall be a reappraisal of real property as of the date of a change in ownership of that property. The reappraisal will establish a new base year full value and will be enrolled on the lien date following the change in ownership.

"(b) A 'change in ownership' in real property occurs when there is a transfer of a present interest in the property, and a transfer of the right to beneficial use thereof, the value of which is substantially equal to the value of the fee interest. Every transfer of property qualified as a 'change in ownership' shall be so regarded whether the transfer is voluntary, involuntary, by operation of law, by grant, gift, devise, inheritance, trust, contract of sale, addition or deletion of an owner, property settlement . . . or any other means. A change in the name of an owner of property not involving a change in the right to beneficial use is excluded from the term 'transfer' as used in this section."

The California Code of Regulations gives examples of how the general rules governing "transfer" and "change of ownership" apply in varying contexts. Regarding real property held in trust, the general rule is a "change in ownership" occurs upon creation of the trust by the transfer of real property into the trust. (Cal. Code Regs., tit. 18, § 462.160, subd. (a).) There are several exceptions to this general rule, including an exception for the transfer of real property into a *revocable* trust. Section 462.160, subdivision (b)(2) provides a transfer to a trust is *not* a change in ownership upon the creation of or transfer to a trust if "[t]he transfer of real property or an ownership interest(s) in a legal entity by the trustor(s) to a trust which is revocable by the trustor(s); *provided, however, a change in ownership does occur at the time the revocable trust becomes irrevocable* unless the trustor—transferor remains or becomes the sole present beneficiary." (Italics added.)

Thus, under the statutory language and regulations interpreting that language the conclusion is inescapable a change in ownership did not occur upon creation of the revocable Shulman Family Trust in 1975, or when the real property was transferred into the revocable trust. Instead, the change in

ownership occurred when the Shulman Family Trust became irrevocable. The trust became irrevocable upon the death of Hyman Shulman in October 1987 and at that time the full beneficial interests in the property transferred to his daughters as residual beneficiaries of the trust.

The trial court relied on the decision in *Allen* v. *Sutter County Bd. of Equalization* (1983) 139 Cal.App.3d 887 [189 Cal.Rptr. 101] for its conclusion the change in ownership occurred when the trust was created. The *Allen* court held termination of a trust on land did not constitute a "change in ownership" permitting reassessment for property tax purposes because the beneficiaries of the trust held the same proportional interests in the property both before and after termination of the trust. Therefore, the trial court found section 62, subdivision (a)(2) applied and concluded the real property was not subject to reassessment because the Shulmans' daughters had the same proportional "beneficial" interests in the property both before and after Hyman Shulman's death. Section 62, subdivision (a)(2) excludes from a "change in ownership" any "transfer . . . between legal entities . . . which results solely in a change in the method of holding title to the real property and in which proportional ownership interests of the transferors and transferees . . . remain the same after the transfer." (See also Cal. Code Regs., tit. 18, § 462.160, subd. (d)(5) [termination of a trust does not result in a change in ownership if the termination results in a transfer to the beneficiaries who receive the same proportional interests in the property they held prior to termination].)

Reliance on section 62, subdivision (a)(2) is misplaced because it ignores Hyman Shulman's beneficial interests in the trust property prior to termination of the trust. Reliance on the *Allen* decision is also misplaced because that decision concerned an *irrevocable* trust, the creation of which is expressly made a reassessable event. (§§ 60, 61, subd. (g); Cal. Code Regs., tit. 18, § 462.001.)

With the creation of an irrevocable trust, trust beneficiaries acquire a vested and present beneficial interest in the trust property, and their interests are not subject to divestment as with a revocable trust. Thus, the nature of a beneficiary's interest differs materially depending on whether the trust is revocable or irrevocable. The trial court failed to give due consideration to the distinction between revocable and irrevocable trusts and the different treatment each receives for property tax reassessment purposes.

Moreover, it would raise questions of fairness—to say nothing of administrative difficulties—if real property held by a revocable trust could be

reassessed every time a trustor changed his or her designated beneficiaries or terminated or reinstated the trust. As the tax laws acknowledge, the better approach is to only consider a transfer a change in ownership when that transfer results in the vesting of a present interest, rather than a contingent interest, which is not, or no longer, subject to being divested.

This interpretation of the different treatment of revocable, as compared to irrevocable, trusts is supported by the January 1979 Report of the Task Force on Property Tax Administration commissioned by the Legislature after the voters adopted Proposition 13.[2] The task force report recommended reassessment of real property held by a trust only in the event the trust is or becomes irrevocable. The task force reasoned as follows:

"5. *Trusts*. Revocable living trusts are merely a substitute for a will. The gifts over to persons other than the trustor are contingent; the trust can be revoked or those beneficiaries may predecease the trustor. Transfers into trust are not changes in ownership if either:

"(a) The trust is revocable, or;

"(b) The creator of the trust is its sole beneficiary during his lifetime.

"If the trust is revocable it is excluded because the rights conferred are contingent. If the trustor is the sole beneficiary during his lifetime, his retained interest is considered to be 'substantially equivalent in value' to the fee interest in any real property covered by the trust. He is therefore the true owner and the change in ownership does not occur *until* the property passes to the remaindermen on the trustor's death." (Original italics.)

Consistent with the task force's recommendation, the Legislature enacted section 61, subdivision (g) to provide a "change in ownership" includes "[a]ny interests in real property which vests in persons other than the trustor . . . when a revocable trust becomes irrevocable."

In sum, a change in ownership occurred in this case when the Shulman Family Trust became irrevocable on Hyman Shulman's death in October 1987. (See also 1 Estate Planning Practice (Cont.Ed.Bar 1995) Lifetime Gifts and Transfers for Consideration, § 6.55, pp. 293-294.) Consequently, the real property was subject to reassessment, unless exempted under the

---

[2]At the County's request, we agreed to take judicial notice of the January 1979 Report of the Task Force on Property Task Administration commissioned by the Legislature after passage of Proposition 13. (Evid. Code, §§ 452, subd. (h), 459.)

exclusion from reassessment for transfers between parents and their children. (§ 63.1.)

II. *Empire's Request for Exemption Under Section 63.1 for Transfers Between Parents and Their Children Was Untimely. Consequently, Empire Is Not Entitled to the Exclusion or to a Refund of Property Taxes.*

Section 2, subdivision (h) was added to article XIII A of the California Constitution in November 1986 when the voters approved Proposition 58. (See *Larson* v. *Duca* (1989) 213 Cal.App.3d 324, 328 [261 Cal.Rptr. 559].) It provides the terms "purchase" and "change in ownership" do not include ". . . the purchase or transfer of the principal residence of the transferor in the case of a purchase or transfer between parents and their children, as defined by the Legislature, and the purchase or transfer of the first $1,000,000 of the full cash value of all other real property between parents and their children, as defined by the Legislature. . . ." (Cal. Const., art. XIII A, § 2, subd. (h).)

Operative June 17, 1987, the Legislature added section 63.1 to implement the provisions of California Constitution article XIII A, section 2. (1 Estate Planning Practice, *supra*, Lifetime Gifts and Transfers for Consideration, § 6.54, pp. 283-284.)

The definition of a "transfer" under section 63.1 is consistent with section 60's definition of "change in ownership." A "transfer" includes, "and is not limited to, any transfer of the present beneficial ownership of property from an eligible transferor to an eligible transferee through the medium of an inter vivos or testamentary trust." (§ 63.1, subd. (c)(7).)

Under section 63.1 eligible transferees have three years from the date of "transfer" to file a claim for exemption from reassessment for transfers between parents and their children. Section 63.1, subdivision (e) provides: "Any claim under this section shall be filed:

"(1) For transfers of real property between parents and their children occurring prior to September 30, 1990, within three years after the date of the purchase or transfer of real property for which the claim is filed.

". . . . . . . . . . . . . . . . . . . . . . .

"(3) Notwithstanding paragraphs (1) and (2), a claim shall be deemed to be timely filed if it is filed within six months after the date of mailing of a

notice of supplemental or escape assessment, issued as a result of the purchase or transfer of real property for which the claim is filed.

"(4) Unless otherwise expressly provided, the provisions of this subdivision shall apply to any purchase or transfer of real property that occurred on or after November 6, 1986." (See also Ross, Cal. Practice Guide: Probate 1 (The Rutter Group 1986) ¶ 1:276.1a, p. 1-92.1, rev. #1, 1995.)

■ Hyman Shulman died on October 5, 1987. At his death the Shulman Family Trust became irrevocable and the beneficial use of the real property held by the trust transferred to his daughters as residual beneficiaries. The three-year statute of limitations for filing a claim for exemption expired on October 5, 1990. Empire filed its claim for exemption on November 22, 1991, or more than 13 months after the time period for filing a claim had lapsed. Accordingly, Empire's claim for exemption from reassessment for transfers between parents and their children was untimely and it is not entitled to a refund of property taxes.

Empire seeks to avoid this conclusion by pointing out the Legislature did not adopt the provision specifying a three-year statute of limitations until 1988, the year following Hyman Shulman's death. For this reason Empire argues the three years should run from the effective date of the provision— January 1989. Empire argues the general principle should apply that in " 'cases of doubt statutes levying taxes are construed most strongly against the government and in favor of the taxpayer.' " (*Larson* v. *Duca, supra,* 213 Cal.App.3d 324, 329, quoting *Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174, 1181-1182 [224 Cal.Rptr. 285].)

First we note Empire had almost two years to file its claim after the provision enacting the three-year statute of limitations became effective. Moreover, the Legislature has expressly stated its intention for the three-year limitations period to apply to any and all applicable transfers occurring after November 1986, the date the voters adopted Proposition 58. Section 63.1, subdivision (h) provides the provisions of section 63.1 "shall apply to purchases and transfers of real property completed on or after November 6, 1986, and shall not be effective for any change in ownership, including a change in ownership arising on the date of a decedent's death, that occurred prior to that date."

The enactment of this subdivision amply clarified whatever ambiguity might have existed immediately after adoption of Proposition 58. Moreover,

in the face of this mandatory language, this court is not free to adopt an alternative limitations period to suit the circumstances of this case.

## DISPOSITION

The judgment is reversed. Each side to bear its own costs of appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied May 9, 1996, and respondent's petition for review by the Supreme Court was denied June 26, 1996.