**In re Marie Elizabeth SCHMITT, Debtor.**

**Charles H. BURTON; Fred L. Schmitt, Appellants,**

**v.**

**Dale D. ULRICH, Ch. 7 Trustee; Elizabeth Enright, as trustee of the Eugene and Jean Margery Stelzer Trust; and Marie Elizabeth Schmitt, Appellees.**

**BAP No. AZ–96–1649–MeJR.**

**Bankruptcy No. B–94–01353–PHX–RGM.**

**Adversary No. 95–657.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 20, 1997.

Decided Aug. 25, 1997.

---

John F. O'Connor, Phoeniz, AZ, for Charles H. Burton and Fred L. Schmitt.

Darra L. Raydon, Raydon Law Office, P.C., Tempe, AZ, for Elizabeth Enright, Trustee.

Before MEYERS, JONES and RUSSELL, Bankruptcy Judges.

## OPINION

JAMES W. MEYERS, Bankruptcy Judge.

### I

A creditor appeals an order approving a compromise of an adversary proceeding.

We **AFFIRM.**

### II

### FACTS

Marie Elizabeth Schmitt ("Debtor") filed a Chapter 7 bankruptcy petition on February 11, 1994. Dale D. Ulrich ("Ulrich") was appointed Chapter 7 trustee. On June 10, 1995, the bankruptcy court entered an order pursuant to Fed.R.Bankr.P.2004 directing Elizabeth Enright ("Enright") to appear at the office of Ulrich's counsel for an oral examination, and to produce a copy of a trust and all related documents reflecting the Debtor's interest in the trust and the assets and liabilities of the trust. The referenced trust is the Eugene Stelzer and Jean Margery Stelzer Trust ("Trust") established by the Debtor's aunt and uncle.

Enright provided only four redacted pages of the Trust documents. These pages show that upon the death of the first of the trust's settlors, the Debtor would be entitled to "United Parcel Service shares of a value of $10,000...." The Trust provides: "By its terms the Trust may be amended by the settlors at any time by an instrument in writing signed by them." Eugene Stelzer was the first of the settlors to die, on December 4, 1994.

On September 14, 1995, Ulrich filed an adversary complaint against Enright, as trustee of the Trust, and the Debtor, asking that the Debtor's interest in the Trust be turned over to the estate. Subsequently, Ulrich filed a motion for summary judgment.

The bankruptcy court denied the summary judgment motion and ordered the parties to file a joint pretrial order. The order was filed on January 17, 1996. Among other things, the order provided that as an undisputed fact the "situs of the trust assets is in Oregon."

On March 29, 1996, Ulrich filed a motion to compromise the dispute. Under the proposed agreement, the estate would receive $2,000 of the distributions to the Debtor from the Trust. An objection was filed by Fred Schmitt and Charles Burton ("Appellants"), as trustees of the Helen M. Schmitt Trust and representatives of the estate of Helen M Schmitt. The Helen M. Schmitt Trust is a creditor of the estate. Fred Schmitt is the Debtor's brother and Helen Schmitt's son. At the conclusion of the June 10, 1996 hearing, the court took the matter under advisement.

The court issued a decision and order approving the compromise. It reasoned that although collectibility would not be difficult, the likelihood that Ulrich could recover the property was small, as the Debtor's interest in the United Parcel Service ("UPS") stock probably was not property of the estate. Additionally, the court stated that litigation could be costly and complex. The Appellants appeal the order.

### III

### STANDARD OF REVIEW

Although the law favors compromise, the party proposing the compromise has the burden of showing that it is fair and equitable and should be approved. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986)(Bankruptcy Act case). "Approving a proposed compromise is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interests of the estate nor fair and equitable for the creditors." *In re MGS Marketing*, 111 B.R. 264, 266–67 (9th Cir. BAP 1990).

### IV

### DISCUSSION

We hold that the court did not abuse its discretion in approving the settlement. Critical to our holding is the fact that the Trust was revocable at the time the bankruptcy petition was filed. We determine that because the Trust was revocable, the Debtor's interest in it is not part of the estate.

Therefore, settling the case for $2,000 gave the creditors $2,000 more than they would have received had the turnover proceeding gone to trial.

The Appellants and Dissent share our initial concerns regarding Enright's failure to produce the complete Trust documents. However, our concerns have been assuaged. The record shows that there was no dispute regarding the basic premise of the settlement—that the Trust was revocable. Under applicable state and federal law, a debtor's interest in a revocable trust is not included in the bankruptcy estate. Consequently, further scrutiny of the Trust documents would at most reveal the value of the Debtor's personal property interests. Given that the creditors of the estate would be entitled to nothing from the Trust, whether the Debtor can keep $4,500 for herself or $300,000 for herself is immaterial. There is no point in requiring Ulrich to enhance the record, as urged by the Appellants and the Dissent.

## A. The Woodson Factors

■ In determining whether to approve a compromise, the court must consider:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988) (quoting *A & C Properties, supra*, 784 F.2d at 1381).

■ The main dispute in this appeal concerns the probability of success in the litigation. At issue is whether Ulrich could have successfully claimed the interest in the Trust for the estate. Whether an asset is estate property is determined by examining the nature of the asset on the date the bankruptcy petition was filed. 11 U.S.C. § 541(a)(1); *In re West*, 64 B.R. 738, 744 n. 12 (Bankr.D.Or.1986), *aff'd*, 81 B.R. 22 (9th Cir. BAP 1987). Bankruptcy Code ("Code") Section 541, which defines property of the bankruptcy estate, "was intended to be broad

and all-inclusive." *In re Bialac*, 712 F.2d 426, 430 (9th Cir.1983). Under Section 541, estate property includes "all legally recognizable interests, although they may be contingent and not subject to possession until some future time." *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir.1984).

There is no Ninth Circuit authority determining whether an interest in a revocable inter vivos trust constitutes estate property. In *In re Neuton*, 922 F.2d 1379, 1381 (9th Cir.1990), the Court of Appeals considered an irrevocable inter vivos trust in which the debtor's interest vested upon the death of the debtor's mother, 46 days after the Chapter 7 petition was filed. Relying on prior Ninth Circuit case law and general trust principles, the Court of Appeals held that the debtor had a contingent interest in the trust income as of the commencement of the bankruptcy case, which became estate property under Code Section 541(a)(1). 922 F.2d at 1382. The instant case differs from *Neuton* in that it involves a revocable trust, a difference we find highly significant.

In *In re Harrell*, 73 F.3d 218, 219 (9th Cir.1996), the court, applying Arizona law, held that a revocable benefit was not a property interest. It stated that before deciding what interests of the debtor belong to the estate under Code Section 541(a), the threshold questions of the existence and scope of the debtor's interest in the property should be determined under state law. *Id.* The court held that because under Arizona law a mere expectation of renewal of an interest in property is not a property right, the bankruptcy trustee could not sell the debtor's revocable opportunity to renew season tickets to the Phoenix Suns basketball games. The court noted that although the Suns generally permitted season ticket holders to renew tickets, season ticket holders were powerless to stop the Suns from declining to do so. And even if the high probability of renewal of season tickets added to the salable value of a season ticket, the addition represented a speculation on chance rather than a legal right. 73 F.3d at 220. Following *Harrell*, it is germane whether an interest in a revocable trust is a property right under state law.

Whether the law of California or Oregon governs this case is unclear. Several facts indicate that Oregon law should apply. The settlors' signatures on the trust were notarized in Oregon. At the time of settlor Eugene Stelzer's death, he was a resident of Oregon. In the Pretrial Order, the parties agreed that the assets of the trust are in Oregon. Enright's trust counsel has his offices in Oregon. Other facts in this case suggest the application of California law. At the time of the creation of the trust, Eugene Stelzer was a resident of California. Enright's signature on the trust was notarized in California. The trust provides that certain payments "shall be charged against the trust in accordance with California law." We need not determine whether Oregon or California law applies, since we conclude that in either state an interest in a revocable trust is not a property right.

█] Under Oregon law, the beneficiary of a revocable trust does not have a property right. In *Johnson v. Commercial Bank,* 284 Or. 675, 588 P.2d 1096 (1978), the Oregon Supreme Court held that a settlor of a revocable trust would be treated as owner of the trust, allowing the plaintiff creditor to reach the trust assets to pay her claim. The court pointed out that "the settlor's retention of the right to revoke ... makes him the owner for income and estate tax purposes, for computing perpetuities periods, and for determining the liability of a trustee who acts outside his proper powers with the settlor's permission." *Id.* at 682 n. 5, 588 P.2d 1096. The court reasoned that because the beneficiaries' interests were subject to complete defeasance at any time during the settlor's lifetime if he chose to exercise his right to revoke, the settlor's interest extended to the entire trust. *Id.*

California law is similar to Oregon law in this regard. In *Empire Properties v. County of Los Angeles,* 44 Cal.App.4th 781, 786–87, 52 Cal.Rptr.2d 69 (1996), the court held that for state property tax reassessment purposes, a change in ownership generally does not occur upon creation of a revocable trust or when property is transferred into the revocable trust. Rather, the change in ownership occurs when the trust becomes irrevocable. The court in *Heifetz v. Bank of America,* 147 Cal.App.2d 776, 784, 305 P.2d 979 (1957), noted that when the settlor's power to modify a trust is unrestricted, he can modify it to exclude all the beneficiaries. Consequently, the court held that only the settlor has any beneficial interest in the trust. *Id.* The court stated that when a trust expressly reserves the power to change the beneficiaries, no one acquires any right under the trust instrument, except the settler to administer the trust in accordance with its terms. 147 Cal.App.2d at 784–85, 305 P.2d 979. Finally, in *Title Ins. & Trust Co. v. McGraw,* 72 Cal.App.2d 390, 400, 164 P.2d 846 (1945), the court held that beneficiaries of a revocable trust were not indispensable parties to an action by the settlor/trustor to rescind the trust, as the beneficiaries "had no present interest in the property and would not have any interest therein until the death of the trustor."

In sum, the answer to the threshold question posed in the. *Harrell* case, whether the Debtor had a property interest in the Trust assets under state law, is no.[1] Because the Debtor did not have a property interest in the revocable Trust at the time she filed the bankruptcy petition, the UPS shares did not come into the estate when the settlor of the trust died ten months after the petition was filed.[2] The probability of successfully claim-

---

1. Several bankruptcy courts outside the Ninth Circuit have found that the debtor's interest as a beneficiary of a revocable trust is estate property under Section 541(a)(1). The court in *In re Smith,* 189 B.R. 8 (N.D.Ill.1995), applying Wisconsin law, affirmed the bankruptcy court's holding that the Chapter 7 debtor's interest in a revocable trust was estate property. In *In re Crandall,* 173 B.R. 836, 839 (Bankr.D.Conn. 1994), the court cited general trust principals to hold that the debtor's interest in a revocable trust

was estate property. To the extent that *Smith* and *Crandall* are not distinguishable from this case, we disagree with them.

2. Because the Trust became irrevocable over 180 days after the bankruptcy petition was filed, and because Section 541(a)(5)(A) does not concern inter vivos trusts, *Neuton, supra,* 922 F.2d at 1384, that Section would not cause the UPS stock to become estate property.

ing the UPS stock for the estate was quite low.

Even if the Debtor had a property interest in the Trust at the time she filed her bankruptcy petition, the interest had no or little value. In *In re Dias*, 37 B.R. 584 (Bankr.D.Idaho 1984), cited favorably in *Neuton, supra*, 922 F.2d at 1382–83, an inter vivos trust terminated upon the death of the last of the testators. At that time, one-half of the corpus of the trust was to be given to one daughter or her survivors and the other half was to be distributed to three granddaughters, one of which was the Chapter 7 debtor. The granddaughters were not to receive trust funds until they turned 25 years old. Prior to that time, the trustee had sole discretion to invade each granddaughter's share of the trust to provide for her support or education. The bankruptcy court found that although the debtor's interest in discretionary payments for her support or education was estate property, the interest had no value. 37 B.R. at 586. The court recognized that the estate takes no greater interest in the property than the beneficiary had at the time the bankruptcy petition was filed. 37 B.R. at 586 n. 1. As to the debtor's one-third interest in the corpus of the granddaughters' portion of the trust payable upon her reaching 25 years in age, the court stated:

> This is ... not one of those cases where the contingency is so remote or speculative as to make attachment and sale unreasonable, i.e. where the interest would bring a nominal or tremendously undervalued price not significantly benefiting creditors and unconscionably injuring the beneficiary should the interest ever vest in possession.

37 B.R. at 587. The court held that the debtor's interest in her share of the trust on the filing date could have been sold or assigned for value on the petition date. The fact that the interest was subject to divestment, had the debtor not reached the age of 25, merely reduced the value of that beneficial interest below the face value of her proportional share of the trust. *Id.*

Applying *Dias* to the instant case, we regard the contingency that the Trust would not be revoked to be so speculative as to make attachment and sale of the interest in the Trust unreasonable. The interest would have brought a nominal or tremendously undervalued price if sold at the time of the bankruptcy filing. The Debtor's interest in the revocable trust had little or no value. The probability that Ulrich could have recovered more than the $2,000 promised in the settlement is slim.

Ulrich contends that the Trust asset was worth only $4,524, which represents $10,000 from the proceeds of the stock less the $5,476 in estate taxes which the Debtor would owe. The Appellants maintain that the Trust could be interpreted as granting the Debtor the UPS shares themselves, which supposedly were worth $10,000 at the time the Trust was created and had vastly appreciated in value since that time. The Appellants also dispute the tax figure provided by Ulrich. When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. *In re Blair*, 538 F.2d 849, 851–52 (9th Cir.1976) (Bankruptcy Act case); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y.1991). A mini trial on the merits is not required. *Id.*

The fact that the parties dispute whether the trust asset is estate property, whether the asset is limited in value to $10,000 and what the tax consequences are, shows that the litigation could be complex. Complexity of litigation is the third factor cited in *Woodson*, and in this case favors settlement.

The parties agree that collection would not pose difficulties, which is the second consideration enounced in *Woodson*. As to the fourth factor, although *Woodson* advises courts to give due deference to creditors' reasonable views concerning settlement, such objections are not controlling. *A & C Properties, supra*, 784 F.2d at 1382.

Under the four *Woodson* criteria, the bankruptcy court did not abuse its discretion in approving the settlement.

## B. *Whether the Compromise Is Fair and Equitable*

The bankruptcy court may approve a compromise only if it is fair and equitable. *Woodson, supra,* 839 F.2d at 620. The Appellants contend that it is not. They allege that the Debtor transferred assets prepetition and failed to help Ulrich gather information postpetition. There is no evidence supporting these claims in the appellate record. The Appellants also complain that the Debtor did not originally schedule her interest in the Trust, that complaints seeking to deny the Debtor's discharge have been filed and that Enright wrongfully refused to disclose large portions of the Trust documents.

The Appellants appear to be arguing that the court should have refused to approve the compromise in order to punish the Debtor for her alleged wrongdoings. This argument erroneously assumes that the debtor is the intended beneficiary of a settlement. In approving a compromise, a court is to determine whether it is in the best interests of the *estate* and whether it is fair and equitable for the *creditors. MGS Marketing, supra,* 111 B.R. at 266–67. Whether a compromise will benefit or harm the debtor is immaterial. The bankruptcy court can sanction the Debtor for the alleged wrongdoings. Ulrich's motion for approval of a compromise should not have been denied on the basis that the Debtor acted wrongfully.

The Dissent catalogs the alleged wrongdoings of the Debtor. It points out that the Debtor originally scheduled her claims against others to be worth $1.4 million, when these claims later were purchased for only $2,000. The Dissent complains that the Debtor's interest in the UPS stock initially was not disclosed. The Dissent criticizes the Debtor for bringing a motion for *in camera* review, a motion made in a different adversary proceeding than the one at hand and filed two months *after* the settlement was approved and the notice of appeal filed.

The issue before us is not whether the Debtor deserves sanctions. The issue is whether the settlement is in the best interests of the estate and fair and equitable for the creditors. The only particularly relevant criticism against the Debtor is the Dissent's complaint that the Debtor did not somehow force Enright to provide the court with the entire Trust documents. We discuss this concern next.[3]

## C. *Approval of the Compromise with Limited Information*

The Appellants contend that the court did not have enough information to determine whether the compromise was in the estate's best interest. They claim that because only partial Trust documents were furnished, it is impossible to determine: the valuation date of the UPS stock; whether the Debtor is liable for taxes on the stock; and the Debtor's rights under the trust instrument.[4]

---

**3.** The Dissent also complains about the court's failure to accept the Appellants' alleged offer to purchase the estate's interest in the Trust. The Appellants made no such offer in their written opposition to the settlement. Their attorney stated at the hearing that he was authorized to make an offer of $2,100 to purchase the interest. He then said: "That is, however, not our primary interest. We're not trying to route around, looking into other people's private financial dealings. What we are asking is that the Trustee be allowed that particular opportunity." Ulrich's attorney responded: "To the extent that [the Appellants] would like to make a higher and better offer for the estate's interest in litigation, the Trustee is always interested in maximizing the return to the estate, and we would be willing to accept that offer, depending on how the Court wants to handle this matter from this point forward." Ten days after the court took the matter under submission, the order was filed. There is no indication that the Appellants ever followed up on their attorney's oral reference to an offer. The Appellants' brief to the Panel does not mention an offer.

**4.** Several months after the order on appeal was entered, in a different adversary proceeding in the Debtor's bankruptcy case, the bankruptcy court allegedly conducted an *in camera* review of the trust documents. Appellees Enright and the Debtor contend that because the court eventually reviewed all the trust documents and did not amend its order approving the settlement, the issue of nondisclosure of the trust documents is moot. This argument lacks merit because the court was powerless to amend its order once it was appealed. A pending appeal divests a bankruptcy court of jurisdiction. *In re Hagel,* 184 B.R. 793, 798 (9th Cir. BAP 1995).

A compromise should not be approved where key facts relevant to a cause of action are not revealed. *In re Lion Capital Group,* 49 B.R. 163, 189 (Bankr.S.D.N.Y. 1985). "An approval of a compromise, absent a sufficient factual foundation, inherently constitutes an abuse of discretion." *Matter of AWECO, Inc.,* 725 F.2d 293, 299 (5th Cir.1984). On the other hand, in determining whether to propose a compromise, a trustee need not burden the estate "with costs and expenses arising out of all manner of questions that may be presented for litigation." *Matter of Carla Leather, Inc.,* 44 B.R. 457, 472 (S.D.N.Y.1984), *aff'd,* 50 B.R. 764 (S.D.N.Y.1985).

We do not believe the failure to obtain the Trust documents in their entirety calls for reversal of the order approving the compromise. First, because it is listed third under the category "Other Specific Bequests," the Debtor's gift seems minor in relation to others listed in the Trust. Therefore, it is doubtful whether the Trust document provides further detail about the Debtor's gift or her rights.

More importantly, the informational problems about which the Appellants complain concern the monetary value of the Debtor's gift. The amount of the gift is irrelevant if it is not estate property. The parties do not dispute the fact that the Trust was revocable at the time the bankruptcy petition was filed; it is the revocability of the Trust which takes it outside of the bankruptcy estate.

The Dissent asserts that the probability of success in litigation cannot be determined without reviewing the entire Trust documents, as the documents might reveal the value of the Debtor's interest in the stock. But the value of this asset is immaterial. We have concluded as a matter of law that a beneficiary of a revocable trust has no property rights under Oregon or California law. Because the Debtor had no legal interest in the Trust property on the bankruptcy filing date, the property is not part of the bankruptcy estate. Therefore, the amount the Debtor personally will receive from the Trust

is a question of no consequence here, since in any event the bankruptcy estate would receive nothing from the Trust.

### D. *Request for Sanctions*

In their appellate brief, the Debtor and Enright ask the Panel to impose sanctions on the Appellants for filing a frivolous appeal. A request for sanctions in an appellee's brief is procedurally improper under Fed.R.App.P. 38, as it does not provide the appellant sufficient notice and opportunity to respond to the request. *In re Sandoval,* 186 B.R. 490, 496 (9th Cir. BAP 1995). The request for sanctions is denied.[5]

## V

### CONCLUSION

The court did not abuse its discretion in approving the compromise. The Debtor's interest in the revocable Trust was not estate property and had little value at the time of the bankruptcy filing. Hence, the probability of successful litigation was low. There were several complex disputed issues which would have made litigation somewhat costly. Applying the *Woodson* criteria, the compromise was in the best interest of the creditors. Further, it was fair and equitable for the creditors. The fact that the full Trust documents were not provided for the bankruptcy court's review does not justify reversal.

**AFFIRMED.**

The request for sanctions is **DENIED.**

RUSSELL, Bankruptcy Judge, dissenting.

I respectfully dissent.

This is a very troubling case, carefully orchestrated by both the debtor and the Stelzer Trust to conceal material facts and to force a compromise based upon the false premise that only a relatively small amount of money was at issue, i.e., $4,524.

I would REVERSE and hold that the bankruptcy court abused its discretion and erroneously applied the factors set forth in

---

**5.** The Appellants asked the Panel to take judicial notice of documents which purportedly demonstrate that appellate sanctions are not merited.

Because we hold that the request for sanctions is procedurally improper, the motion for judicial notice is moot and will not be considered.

*In re Woodson,* 839 F.2d 610 (9th Cir.1988) to the proposed settlement because neither the court nor the Trustee had the basic documents from which either the nature of the debtor's interest in the UPS stock or the value of that interest could be determined. The documents were deliberately withheld despite the Rule 2004 order requiring production of the documents.

I believe that it is inappropriate to consider "the success in the litigation" *Woodson* element until the entire Trust document is disclosed to the Trustee.[6] Without such disclosure, it is pure speculation to discuss the rights of the various parties. In fact, considering the conduct of the debtor and the Stelzer Trust, I have a serious question whether there are other relevant documents which have been concealed which would shed more light on the debtor's rights under the Trust.

I totally disagree with the unsupported conclusion of the majority "that the litigation could be complex." Indeed, with full disclosure by the debtor and the Trust, determination of the parties' rights would be a question of law. A mere two hours was estimated for trial.

## VALUATION ISSUE

The importance of the valuation issue has been underestimated by both the trial court and the majority. Both the debtor and the Trustee succeeded in convincing the trial court that because the maximum benefit to the estate was $4,524, a settlement of $2,000 to the estate was very reasonable and should be approved. This faulty assumption colored the entire proceeding to the disadvantage of both the Trustee and the appellants. Without the full disclosure of the Trust documents, it was impossible to determine the value of the debtor's stock interest. The appellants presented evidence that a similar investment in UPS stock increased in value from $10,000 in 1978 to $300,000 by 1992.

This faulty assumption of the value of the stock led the court to pressure the Trustee to settle the litigation. In response to a state-

ment by the debtor's counsel at the June 10 hearing that they settled at the court's suggestions, the court responded, "I thought it was a good idea at the time because, look, here, we've got three lawyers running up some money on it."

Without the complete Trust document, the Trustee relied upon Mr. Rutkowski's (the Oregon attorney for the trustee of the Trust) letter of September 12, 1995, which stated, "The net result is that UPS shares with a total value at the date of distribution to, or on behalf of, Ms. Schmitt will be $4,524." Mr. Rutkowski also stated in this letter that "it is my interpretation of the controlling Trust Document that the date of distribution value will be used."

The appellants' counsel argued that the value of the stock was not certain, particularly when the Trust documents were redacted: "This is stock that has increased tremendously in value over the years, and so consequently the valuation date of the gift of stock becomes an extremely material piece of information.... The key issue ... is the valuation date, and if the lawyer's [Rutkowski] letter is to be relied upon, this court ought to be aware that what we are relying upon is his interpretation without the Trustee's attorney having the opportunity to interpret the same document."

To illustrate the potential value of the stock, the appellants' $10,000.00 investment in UPS stock from the same source in 1978 resulted in an increase in value to $300,000.00 by 1992.

The appellants had offered to purchase the Trustee's position for more than the $2,000 offered in the settlement. The debtor's attorney objected to the offer made by the creditors to pay more than $2,000 and to step into the Trustee's position, by minimizing the potential value of the debtor's interest in the Trust, stating: "This is not a bidding war over a lot of assets. This is merely a good faith settlement on the debtor's part to end this over two-year bankruptcy, and there are not a million dollars worth of assets in the estate...." I see no justification for the court's failure to accept the higher offer by

---

**6.** My deferral of the merits of the litigation does not mean that I agree with the majority's conclu-

sion that the debtor's interest in the Trust is not property of the estate.

the appellants. If in fact, the value of the UPS stock is over $100,000, then the creditors of the bankruptcy estate had a right to a "bidding war over a lot of assets."

## PROCEDURAL BACKGROUND

A brief review of the procedural background of the case will shed light on the carefully orchestrated efforts by the debtor and the Seltzer Trust to conceal material facts. These material facts concerned more than merely the value of the stock as stated by the majority. Rather, the concealment of the material facts went to the heart of the bankruptcy estates' rights under the Trust.

The debtor filed a chapter 7 petition on February 11, 1994. The debtor filed her schedules and statement of financial affairs, but failed to list her contingent beneficial interest in United Parcel Service stock, nor did she disclose that information in her amended schedules. Even when the debtor allegedly discovered her interest in the UPS stock, she did not amend her schedules to reflect the interest.

The UPS stock was described in an *inter vivos* trust established by the debtor's uncle, Eugene Stelzer. Initially, the debtor listed alleged assets of nearly $1,400,000.00, consisting primarily of claims against others, including the appellants. The debtor amended those schedules to evidence a reduction of those claims by $750,000.00. The claims against the debtor were purchased by the appellants for $2,000.00 after objection, notice and hearing.

On June 10, 1995, the Trustee discovered the existence of the debtor's interest in the Stelzer Trust and was granted a Rule 2004 examination to examine the relevant documents of the Stelzer Trust, to which the trustee of the Stelzer Trust Elizabeth Enright responded by providing four "whited-out" pages of a 1993 amendment to the Stelzer Trust in lieu of the complete document.

The incomplete amendment to the Trust stated that upon the death of one of the Trust settlors, the debtor, niece of settlor Eugene Stelzer, was to receive "United Parcel Service shares of a value of $10,000." It was stipulated that Eugene Stelzer, the first

of the settlors to pass away, died on December 4, 1994, more than six months after the debtor filed her bankruptcy.

On September 14, 1995, the Trustee commenced an adversary proceeding against Elizabeth Enright, as trustee of the Stelzer Trust, and the debtor, seeking a judgment in favor of the Trustee and against Enright, to determine that the debtor's interest in the Trust was property of the bankruptcy estate pursuant to § 541 and that any and all distributions due to the debtor would be distributed to the Trustee pursuant to § 542.

The bankruptcy court ordered the parties to file a joint pre-trial order. In the pre-trial order filed January 17, 1996, the Trustee objected to the introduction of partially disclosed evidence and the failure to comply thoroughly with the Rule 2004 Order. The Trustee's objection was denied at an evidentiary hearing held on February 28, 1996. At this hearing, the Court strongly encouraged the parties to settle.

On March 29, 1996, the Trustee filed a one page motion to compromise the dispute without any analysis of the *Woodson* factors. The motion does not contain any admissible evidence, i.e., by way of declarations or otherwise. The settlement was based on the value of the stock at $10,000.00. After taxes, the debtor allegedly would only receive about $4,000. The Trustee would receive $2,000. The appellants timely filed their written objection to the proposed compromise.

The Trustee's motion to approve the compromise was heard on June 10, 1996, at which time no testimony was given in support of the compromise. Counsel for the appellants objected to the proposed settlement as not in the best interests of the estate because the entire Trust document was not disclosed to the bankruptcy trustee and a 2004 Order was ignored. Counsel also pointed out that Ms. Rayndon was representing both the debtor and the Stelzer Trust in an apparent conflict of interest.

Counsel restated the appellants' offer to withdraw the objection to the settlement if the Trustee were allowed an opportunity to review the entire Trust document completely or, in the alternative, to allow the appellants

to purchase the Trustee's position in order to step into his shoes and continue the litigation.

The Trustee found it difficult to argue with the appellants' objection to the proposed settlement. The Rule 2004 Order had been issued and there was not a full and complete compliance.

The following statements by counsel for the chapter 7 Trustee at the June 10 hearing showed his concerns over the lack of full disclosure:

MR. DAKE: The Trustee is always, in trying to approve settlements, is put in somewhat of a difficult situation. *I find it hard to argue with several of Mr. O'Connor's points.* This is a case where Rule 2004 Orders have been issued and there has not been a full and complete compliance with those orders. In this particular instance, there was an order by the Court directing the trustee of this trust to provide the Trustee *information concerning the debtor's interest in the trust.* What we got was redacted information.

We came down here at one point to commence a trial on this matter, and the information we had received from the trustee indicated that the total distribution that could be expected was approximately $4500. And the Court strongly encouraged us to try and resolve this matter—
THE COURT: I think I did.
MR. DAKE: —and we came back with this proposed settlement. So we have to admit that we were settling this case based upon information that has been provided by the attorney in Oregon for Ms. Enright, and to a certain extent we are relying upon him to provide accurate information about what's in the trust and what the distribution is going to be. It seems to me we would likely have recourse against him if he ever made false representations to us. We are always troubled by a party's failure to comply with the Court's ruling under 2004.

(Emphasis added).

The Trustee's counsel expressed a willingness to allow the appellants to purchase the estate's interest in the litigation:

MR. DAKE: ... *To the extent that Mr. O'Connor's client would like to make a higher and better offer for the estate's interest in litigation, the Trustee is always interested in maximizing the return to the estate, and we would be willing to accept the offer, depending on how the Court wants to handle this matter from this point forward. But, again, we are operating on a little less than all of the information that we should have. We are relying upon the representations made by Mr. Rutkowski, who is the attorney in Oregon.*

(Emphasis added).

The matter was taken under advisement. The bankruptcy court filed its decision on June 20, 1996 approving the proposed settlement made by the Trustee in spite of the fact that the Trustee had offered no support for the settlement figures, except for Enright's Oregon trust counsel Rutkowski's correspondence.

Because the settlement agreement was only based upon Rutkowski's "interpretation" of the Trust amendment and not on the complete Trust, the appellants filed their Notice of Appeal on June 28, 1996.

*The In Camera Inspection Of The Trust Documents*

A bizarre twist to this otherwise unusual case occurred when, on August 20, 1996, the debtor filed a motion for documents to be reviewed *in camera.* I share appellants' suspicions and frustrations over the lack of full disclosure. I am particularly disturbed by the debtor's lack of good faith regarding this motion.

Even the majority has recognized that the debtor failed to show that somehow this *in camera* disclosure solely to the court cured the lack of full disclosure.

I generally agree with the following part of the appellants' response to the *in camera* motion:

It becomes more difficult to determine as time goes on exactly which planet debtor Marie Schmitt and her attorneys are residing on. The current motion for "in camera" review by the Court is filed in Adversary No. 95–580, which was an adversary commenced, in effect, by Marie to

dismiss her bankruptcy, which adversary was dismissed at her request. The current motion for "in camera" review by the Court concerns a matter in Adversary No. 95–657 which has been appealed to the Ninth Circuit Court of Appeals, thereby divesting this Court of jurisdiction thereof. If memory serves undersigned counsel correctly, the matter being appealed, the settlement of Adversary No. 95–657 in spite of the fact that there has not been full disclosure of the trust agreement in question, involves a ruling of this Court in which Marie and the Stelzer Trust prevailed. Do the adversary defendants wish to set aside a ruling in which they prevailed before an appeal hearing is given?

The English language does not contain words to describe the utter and sheer nonsense of the motion. Wrong case. No jurisdiction. De facto motion to undermine a ruling in which a party prevailed.

On a substantive basis, the motion is no less wrong-headed and obtuse. Do defendants wish to re-introduce a star chamber for civil matters? This obsession with "in camera" proceedings has gone a bit far. First, the defendants refuse to disclose the existence of the trust in Marie's schedules, in an effort to hide Marie's assets. Then, they refuse to disclose the trust pursuant to this Court's discovery order. Then, they refuse to disclose the trust in the adversary proceeding. Now, they still refuse to disclose the trust.

What is even more weird, Enright refuses to disclose the trust to her attorney, Ms. Rayndon, as Ms. Rayndon admitted at the hearing in which the settlement was opposed. *How is it, then, that this Court is to be assured that what is presented "in camera" is even the complete trust?*

(Emphasis added).

## CONCLUSION

I strongly disagree with the majority's statement that "the main dispute in this appeal concerns the probability of success in the litigation." It was impossible for the Trustee or the Court, and it is now impossible for this Panel, to properly assess the probability of success in the litigation without full disclosure of all the relevant documents relating to the debtor's rights under the Trust.

It is an affront to the integrity of the bankruptcy system to allow the intentional concealment of relevant documents in violation of a Rule 2004 order to go unpunished and to result in the approval of the compromise.

I agree with the following statement of the majority regarding the relevant law:

A compromise should not be approved where key facts relevant to a cause of action are not revealed. *In re Lion Capital Group,* 49 B.R. 163, 189 ([Bankr. ]S.[D.]N.Y.1985). An approval of a compromise absent a sufficient factual foundation inherently constitutes an abuse of discretion. *Matter of AWECO, Inc.,* 725 F.2d 293, 299 (5th Cir.1984). On the other hand, in determining whether to propose a compromise a trustee need not burden the estate "with costs and expenses arising out of all manner of questions that may be presented for litigation." *Matter of Carla Leather, Inc.,* 44 B.R. 457, 472 ([Bankr. ]S.[D.]N.Y.1984), *aff'd,* 50 B.R. 674 [764] (S.D.N.Y.1985).

As previously discussed, the cost to litigate this matter after full disclosure would be *de minimis.* A mere two hours was estimated for trial.

However, I disagree with the majority's one paragraph concluding discussion which followed. For example:

Therefore, it is *doubtful* whether the Trust document provides further detail about the Debtor's gift or her rights.

(Emphasis added).

Upon what evidence does the majority base its conclusion? Certainly not the evidence admitted at the hearing on the compromise because there is none. If it is based on a review of incomplete documents alleged to be the relevant Trust documents, I disagree. How from the record can the majority be sure that these are all the documents relevant to the debtor's rights? It is also clear from the appellants' brief that they never stipulated that from the partial docu-

ments presented, one could determine the debtor's rights under the Trust.

I would therefore REVERSE the order approving the compromise with instructions to require full compliance with the rights of both the Trustee and the creditors to have full disclosure pursuant to Rule 2004.