**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1000-STaL |
| LENORE L. ALBERT-SHERIDAN, dba Law Offices of Lenore Albert, | Bk. No. 8:18-bk-10548-ES |
| Debtor. | |
| LENORE L. ALBERT-SHERIDAN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| FORD MOTOR CREDIT COMPANY LLC; JEFFREY IAN GOLDEN, Chapter 7 Trustee, | |
| Appellees. | |

Argued and Submitted on October 24, 2019
at Pasadena, California

Filed – December 18, 2019

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

———

Appearances:     Appellant Lenore L. Albert-Sheridan argued pro se;
Aaron E. DE Leest of Danning, Gill, Israel & Krasnoff,
LLP argued for appellee Jeffrey Ian Golden, chapter 7
trustee.

———

Before: SPRAKER, TAYLOR, and LAFFERTY, Bankruptcy Judges.


**INTRODUCTION**

Chapter 7[1] debtor Lenore L. Albert-Sheridan appeals from an order
approving a settlement between the chapter 7 trustee Jeffrey Ian Golden
and Ford Motor Credit Company LLC ("FMCC"). The bankruptcy court
considered at length all of the factors for approving the settlement under
Rule 9019. Additionally, Golden and the bankruptcy court assessed the
settlement as a sale of estate assets and gave all interested parties notice
and an opportunity to overbid to ensure that the best price for the FMCC

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules
of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of
Civil Procedure. All "Local Rule" references are to the Local Bankruptcy Rules for the
Central District of California.

claims was obtained. Albert-Sheridan has not persuaded us that any of the bankruptcy court's findings were clearly erroneous or that the court abused its discretion. Accordingly, we AFFIRM.

## FACTS

Albert-Sheridan is a suspended California attorney. However, her troubles have not been limited to the State Bar of California. For some time, she allegedly has been vexed by a number of different people with whom she has had various dealings. Albert-Sheridan claims that these people have conspired to take various illegal and outrageous actions to make her life miserable. She contends that these persons participated in threats, theft, vandalism, defamatory and libelous statements, spurious legal activity, and the filing of false liens against her. Albert-Sheridan refers to these persons as extremists, terrorists, or sovereign citizens. For purposes of this decision we will generically refer to the persons collectively as "conspirators."

This appeal focuses upon the chapter 7 estate's settlement of Albert-Sheridan's prepetition litigation claims arising in large part from the conspirators' involvement in FMCC's efforts to repossess a Ford Expedition Albert-Sheridan bought from Friendly Ford in Nevada. She contends that, even though she paid Friendly Ford and FMCC over $20,000.00, they did not properly submit the title documents to the California Department of Motor Vehicles as she had requested. As a result, she was unable to register

her vehicle and never received license tags for her vehicle.

Albert-Sheridan maintains that she became increasingly concerned for her safety as the conspirators started to threaten and harass her. Albert-Sheridan states that at least one of the conspirators (whom she had employed at the time) stole her car keys and the accompanying key fob. She maintains that she was unable to change the car's locks and security codes because the car was not registered in her name, nor could she trade in the vehicle, change the Vehicle Identification Number, or even paint it. She argues that her inability to take safety precautions with her vehicle caused her great distress.

FMCC began its efforts to repossess the vehicle, roughly two years after Albert-Sheridan had purchased it. As Albert-Sheridan explains, one or more of the conspirators offered FMCC information regarding her schedule as an aid to repossession. She claims that, in violation of her privacy rights, FMCC communicated with the conspirators about her car loan and gave them the name of the tow truck company that was working for FMCC to repossess the automobile. According to Albert-Sheridan, this enabled the conspirators to witness the tow truck company's repossession of the vehicle from the Orange County Superior Court parking lot while Albert-Sheridan was attending a hearing. She states that the conspirators videotaped the repossession of her car and later "ambushed" her in the parking lot. The incidents surrounding her car registration and the

4

repossession of her vehicle are the gravamen for her intentional infliction of emotional distress cause of action ("IIED claim") against FMCC.

In an action FMCC commenced against her in the Orange County Superior Court, Albert-Sheridan, in addition to her IIED claim, also stated as cross-claims causes of action under the Rees-Levering Automobile Sales Finance Act ("RISC claim"), the Federal Fair Debt Collection Practices Act,[2] and other claims. The parties proceeded to vigorously litigate the matter up to the point of trial. FMCC obtained partial summary judgment disposing of all of Albert-Sheridan's cross-claims except for the RISC claim and the IIED claim. Trial on FMCC's original complaint and Albert-Sheridan's cross-claims was estimated to take up to four weeks. Most of the trial time was expected to be spent on the IIED claim.

Before trial commenced, Albert-Sheridan filed her voluntary chapter 13 petition. FMCC sought and obtained relief from stay to proceed with

---

[2] The Rees-Levering Automobile Sales Finance Act, Cal. Civ. Code §§ 2981, et seq., is a California consumer protection law that deals in relevant part with disclosures that car loan lenders must make to borrowers who purchase a car under a retail installment sales contract. *See White v. MAS Fin. (In re White)*, BAP No. CC-16-1067-TaKuKi, 2016 WL 7189845, at *4 (9th Cir. BAP Dec. 2, 2016). Albert-Sheridan claims that certain disclosures FMCC made to her either were misleading or omitted required information.

The Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., is a consumer protection law that regulates debt collectors in order to prevent abusive, deceptive and unfair debt collection practices. *See Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

trial in the state court action. While Albert-Sheridan was in chapter 13, FMCC offered to settle her claims for $50,000.00. The bankruptcy court ordered the case converted to chapter 7 in June 2018. Golden was appointed to serve as chapter 7 trustee.

In July 2018, Golden moved for permission to retain special automotive litigation counsel Jonathan A. Michaels.[3] The motion sought authority for special counsel to prosecute the FMCC claims to judgment or alternately to negotiate a settlement and help document and finalize a settlement if agreement could be reached. The bankruptcy court approved special counsel's employment.

In October 2018, Golden filed his motion to settle the FMCC litigation. Additionally, Golden gave notice of the sale of all of the estate's interest in the claims against FMCC ("Motion to Settle"). Golden also sought a finding that FMCC qualified as a good faith purchaser under § 363(m). The Motion to Settle was accompanied by a notice setting forth all of the items required by Local Rule 6004-1(c)(3). The notice also included terms for making overbids at the hearing on the motion.[4] Under the notice,

---

[3] Golden's motion to employ Michaels was not included in the parties' excerpts of record. Even so, we have exercised our discretion to review the bankruptcy court's docket and the documents attached thereto. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[4] The debtor complains that the notice of the right to overbid was not served on the creditors. On October 26, 2018, Golden filed his Notice of Motion for (1) Approval of
(continued...)

overbids had to be in minimum increments of $1,000.00, and anyone seeking to overbid was required to notify Golden at least 48 hours before the hearing and submit a $25,000.00 deposit. The notice also specified that the sale would be subject to any liens against the FMCC claims.

Golden proposed to settle with FMCC in exchange for a cash payment of $167,500.00. The Motion to Settle attributed $150,750.00 to the RISC claim and $16,750.00 to the IIED claim.

Golden supported his motion with his declaration and Michaels' declaration. Michaels outlined the allegations underlying Albert-Sheridan's claims against FMCC and summarized the history of settlement negotiations between Golden and FMCC. Those negotiations included an unsuccessful mediation and subsequent negotiations that ultimately led to

---

[4](...continued) Settlement Agreement with Ford Motor Credit Company LLC, (2) Authority to Sell All of the Estate's Right, Title and Interest in the Ford Litigation, (3) a Finding That Ford Motor Credit Is a Good Faith Purchaser under 11 U.S.C. § 363(m), and (4) Waiver of the 14-day Stay ("notice of motion"). The notice of motion advised interested parties of the auction and the right to overbid for the litigation claims. Golden served the notice of motion on electronic filers by notice of electronic filing and on the creditor matrix by mail. Golden also filed a separate Notice of Sale of Estate Property, and an Amended Notice of Sale of Estate Property (jointly, "sale notices"). The sale notices also included information regarding the auction and the right to overbid. The sale notices never were served on the creditor matrix. However, Golden explained that they were submitted to the bankruptcy court only for purposes of posting on the court's website to give further notice of the sale. Debtor has not cited any authority indicating that the October 26, 2018 notice of motion was insufficient in any respect. Nor has she cited any authority suggesting that Golden was obliged to serve the two subsequent sale notices on any party.

the settlement agreement reached. Based on his familiarity with the lawsuit and his experience with automotive industry litigation, Michaels opined that the IIED claim had so little legal merit he was concerned that it could expose the estate to a claim for malicious prosecution. Michaels pointed out that FMCC simply sought to repossess the vehicle and the estate would have difficulty proving the IIED claim at trial. As for the RISC claim, Michaels opined that this claim had more legal merit but was unlikely to yield a large amount of damages and attorney's fees because Albert-Sheridan had represented herself in the action, so there were no attorney's fees to recover. According to Michaels, based on his assessment of the merit and value of the claims against FMCC and based on the expense and uncertainty attendant to continued litigation, he believed that the $167,500.00 settlement was in the best interests of the bankruptcy estate.

Golden expressed the same belief and further opined that the settlement and sale amount was a "fair price" based on his own evaluation and based on Michaels' advice. Golden further represented that the settlement was the result of "arms-length negotiations" and that he had "no independent knowledge of or familiarity with" FMCC.

Albert-Sheridan opposed the Motion to Settle and requested an evidentiary hearing. Her one-paragraph evidentiary hearing request indicated that she might wish to call as witnesses some of the expert and percipient witnesses she had intended to use in her state court trial against

8

FMCC. She did not explain, however, what disputed issues of material fact necessitated an evidentiary hearing. In her opposition papers she made clear her plans to use the proposed evidentiary hearing to try all of the issues raised in the state court action.

Albert-Sheridan asserted that her IIED claim against FMCC was exempted under state law from her bankruptcy estate. Because of this exemption, she maintained that Golden had no authority to sell or settle this claim. Alternately, she argued that the IIED claim was so "personal to her" that it did not qualify as an estate asset. She further insisted that even if the IIED claim was estate property, state law prevented Golden from assigning it.

Albert-Sheridan also assailed Golden's proposed settlement as pitifully low. She maintained that her IIED claim was worth at least $500,000.00. She concluded that $240.00 per day would be a "reasonable figure" for a jury to award her, and multiplied that daily amount by 707 days, resulting in a total of $169,680.00. This amount represented the time she claimed she was "victimized by Ford" up to the time the car was repossessed. To this, she added an additional 940 days to bring her up to the date of her opposition, and again multiplied that by $240.00 per day to equal $225,600.00 for this period of time. Taken together, Albert-Sheridan calculated her total expected IIED damages award to be $395,280.00. She further posited that she could also recover future IIED damages for her

continuing stress. She figured that the jury could provide for her future IIED damages either by matching the past IIED damages, or by multiplying the past damages award by 5, or by awarding her $240.00 per day for the remainder of her life expectancy of 32.5 years. According to Albert-Sheridan, this could yield for her an award for future IIED damages of anywhere between $395,280.00 and $2,847,000.00. She insisted that she was ready, willing, and able to prosecute the state court litigation to conclusion and that she was highly competent to do so.

Albert-Sheridan opined that there was a high likelihood that she would prevail on both of her remaining claims. She based this opinion on the fact that her remaining claims had survived FMCC's demurrers and summary judgment motions. She further stated that there was a similar case in Missouri that resulted in a $1,000,000.00 jury award.

Albert-Sheridan did not propose a competing bid to purchase her claims from the estate. Instead, she relied on her exemption argument and her estate property argument. She indicated that, even if she did not succeed on either of these arguments, she was entitled to reimbursement of the time and money she invested in litigating with FMCC up to the point of trial, in an amount of no less than $115,000.00.[5] In short, instead of offering the estate money or a share in the litigation proceeds, she only spoke of

---

[5] Albert-Sheridan also filed a proof of claim against her estate in the amount of $435,041.73.

what she expected to recover for herself or what she was owed for her prior litigation efforts.

Additionally, she complained that neither Golden nor Michaels reviewed her trial exhibits or interviewed her or her expert witnesses. Albert-Sheridan also filed with the bankruptcy court a declaration and a number of exhibits. These documents focused almost exclusively on her alleged damages. Among these exhibits was an "expert damages report" she prepared herself.

Golden filed a reply in support of the Motion to Settle. He also submitted numerous evidentiary objections to Albert-Sheridan's declaration and exhibits. Golden disputed Albert-Sheridan's assessment of the value of her claims. He also disputed her exemption and estate property arguments. He pointed out that FMCC already had objected successfully to Albert-Sheridan's exemption claim covering the causes of action against FMCC. According to Golden, the exemption ruling precluded Albert-Sheridan from relying on her exemption claim as a basis for barring the settlement.

The bankruptcy court heard the Motion to Settle on December 13, 2018. The court permitted the parties to argue for a considerable amount of time. Albert-Sheridan explained at length why she thought Golden's proposed settlement amount was a small fraction of the true value of the action. She continued to emphasize that Michaels (Golden's special

11

counsel) failed to review her briefs and evidence and based his opinion regarding the value of the action on FMCC's patently false view of the case. She insisted that she had ample evidence to prove millions of dollars in damages.

Albert-Sheridan additionally attempted to tie the actions of the conspirators to FMCC in a few different ways. In essence, she claimed she put FMCC on notice that it was enabling the conspirators to harass her because: (1) she told FMCC she was being harassed by the conspirators; (2) she told FMCC she needed to be able register her car in California; (3) she complained to FMCC that it had failed to take the steps necessary to facilitate her registering the car in California; and (4) the actions of the conspirators in stealing her car keys and stalking her were all the more stressful because she could not do anything to secure her car without it being registered in California.

As for the incidents surrounding repossession of the vehicle, Albert-Sheridan first claimed that, in light of FMCC's violation of the Rees-Levering Automobile Sales Finance Act, FMCC had no right to repossess the vehicle, so its actions were more in the nature of theft than repossession. She also said that her prior notice to FMCC that she was being stalked by the conspirators should have prevented them from talking to any people who called up urging FMCC to repossess the vehicle or offering information regarding Albert-Sheridan's schedule. Regardless of

12

what FMCC knew about the conspirators, Albert-Sheridan insisted that FMCC violated her privacy rights by giving the conspirators the name of the tow truck company they were using to repossess the vehicle and that this violation was sufficient to support her IIED claim even if she failed to prove that FMCC intended to harm her.

Albert-Sheridan also contended that FMCC was not acting in good faith and that the recitals in the settlement agreement stating FMCC's allegations amounted to "fraud on the court." She insisted that the evidence she planned on presenting at trial proved the falsity of FMCC's allegations.

Michaels told a much different story on behalf of Golden. Michaels insisted that he was familiar with the parties' trial briefs and exhibits when he reviewed the IIED claim and determined that it had no reasonable chance of success at trial.  He opined that the main obstacle to success on the IIED claim was convincing a jury that FMCC was intent on conspiring with the conspirators to harm Albert-Sheridan as opposed to simply attempting to repossess the vehicle. According to Michaels, his review of the evidence led him to believe that FMCC did not know that the conspirators were engaged in the acts Albert-Sheridan alleged they committed.

FMCC also told a much different story than Albert-Sheridan. According to FMCC, there were only two phone conversations that Albert-

13

Sheridan relied on to support her IIED claim. The first was a call from Albert-Sheridan in which she told an FMCC representative that a bunch of crazy people were out to get her. The second call occurred months later, to a different FMCC representative, during which the caller told the representative that he or she knew where Albert-Sheridan's vehicle could be found. FMCC did admit that it gave the caller contact information for the "repo firm" which ultimately repossessed Albert-Sheridan's vehicle.

As for the issue regarding the title documents and vehicle registration, FMCC asserted that Friendly Ford sent the appropriate documents to the California Department of Motor Vehicles to permit registration of the vehicle. According to FMCC, the Department ultimately returned the title documents to FMCC because Albert-Sheridan failed for nine months to go to the Department and take the steps necessary to register the vehicle.

The bankruptcy court discussed at length the process it used to assess the propriety of the Motion to Settle. It carefully considered the parties' presentations, particularly Albert-Sheridan's contention that the sale and compromise price was too low. Ultimately, however, the bankruptcy court held that Golden had established all of the requirements for the court to grant the Motion to Settle.

The court also sustained many of Golden's evidentiary objections to Albert-Sheridan's declaration. But the court also indicated that, even absent

14

the objections to the declaration, full consideration of the contents of her declaration would not have changed the court's decision.

On December 27, 2018, the bankruptcy court entered its order granting the Motion to Settle. Albert-Sheridan timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). Subject to the jurisdictional discussion set forth below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion when it granted the Motion to Settle?

## STANDARDS OF REVIEW

We review the bankruptcy court's approval of a compromise motion for an abuse of discretion. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003) (citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380 (9th Cir. 1986)). To the extent Golden sold the claims to FMCC, we review the bankruptcy court's approval of a sale of estate property under § 363 for an abuse of discretion. *Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872, 880 (9th Cir. BAP 2010).

The bankruptcy court abuses its discretion if it applies an incorrect legal rule or its findings of fact are illogical, implausible, or without

15

support in the record. *United States v. Hinkson*, 585 F.3d, 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. Applicable Law.

Rule 9019 provides for the compromise of controversies involving the estate. "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A & C Properties*, 784 F.2d at 1380–81 (citing *United States v. Alaska Nat. Bank of the North (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982)). "The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *Id.* at 1381.

The scope of the bankruptcy court's review of litigation claims sought to be settled is constrained. "When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues." *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997). In other words, "[a] mini-trial on the merits is not required." *Id.*; *see also In re Walsh Constr., Inc.*, 669 F.2d at 1328 (in examining a compromise, "[t]he bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim[s].").

16

"The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1998). But the bankruptcy court only may approve them if they are "fair and equitable." *Id.* (quoting *In re A & C* Properties, 784 F.2d at 1381). In order to determine whether the compromise is fair and equitable, the bankruptcy court typically must consider the following factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A & C Properties*, 784 F.2d at 1381 (citations omitted).

Because the compromise of a claim that is an estate asset is the functional equivalent of a sale, a Rule 9019 compromise can "simultaneously implicate the 'sale' provisions under section 363 as implemented by Rule 6004 and the 'compromise' procedure of Rule 9019(a)." *In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. at 421. The "bankruptcy court has the discretion to apply § 363 procedures to a sale of claims pursuant to a settlement approved under Rule 9019." *Adeli v. Barclay (In re Berkeley Delaware Court, LLC)*, 834 F.3d 1036, 1040 (9th Cir. 2016).

**B. Review Of The Bankruptcy Court's Ruling.**

The bankruptcy court found that the compromise of the FMCC claims was fair, equitable and in the estate's best interests after applying

the *A & C Properties* factors. Though the court acknowledged that there was little or no risk of non-collection of any judgment the estate obtained against FMCC, the court determined that the estate's likelihood of success, the complexity, delay, and costs associated with the litigation[6], and the paramount interests of creditors all militated in favor of the court's approval of the Motion to Settle.

Although Albert-Sheridan strenuously opposes these findings, she focuses almost exclusively on the likelihood of success on the merits of her IIED claim. She asserts that the bankruptcy court erred by not affording her an evidentiary hearing at which she could have proven the merits of this claim. However, as explained above, in evaluating a compromise a court is not expected to resolve the disputed facts and legal questions raised by the underlying litigation. *In re Schmitt*, 215 B.R. at 423. Nor was the court supposed to conduct a mini-trial on the merits. *Id.* Instead, the court determined that the settlement amount fell within the "range of reasonableness" which bankruptcy courts ascertain when assessing a proposed settlement. *See, e.g., In re Rake*, 363 B.R. 146, 156 (Bankr. D. Idaho 2007); *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 416-17 (Bankr. N.D. Cal. 2004).

---

[6] Albert-Sheridan states that the estate could have minimized its costs by permitting her to try the case. But the case was property of the estate, and Golden controlled the prosecution of the claims. The estate retained Michaels for the specific purpose of handling the FMCC claims, and Albert-Sheridan could not represent the estate given her suspension from the practice of law.

Albert-Sheridan contends that the settlement agreement was fraudulent and collusive because it did not acknowledge and accept her view of the merits and her valuation of the FMCC claims. She similarly claims that FMCC was not acting in good faith. She insists that only her view of the claims was supported by the evidence. As the bankruptcy court recognized, FMCC and Golden saw the matter differently. They both contended that the evidence showed that the IIED claim was not worth much at all. They emphasized that there was little or nothing to tie FMCC to the conduct of the conspirators. Nor was there anything to demonstrate FMCC's knowledge of the conspirators' actions at the time they occurred or FMCC's intent to harm Albert-Sheridan. *See generally Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001-02 (1993) (holding that IIED cause of action requires intention of causing, or knowing and reckless disregard of the probability of causing, emotional distress to the plaintiff).

The bankruptcy court indicated that the views of the FMCC action expressed by both sides were reasonable. Ultimately, however, it found that Golden had met his burden and necessarily determined that FMCC's purchase price was within the range of reasonableness for the court to approve the settlement. In other words, the court effectively accepted Golden's view of the merits and value of the FMCC claims as reasonable.

The bankruptcy court had sufficient evidence before it to support its assessment of the merits and the value of the FMCC claims. Even though it

also considered reasonable Albert-Sheridan's view of the FMCC claims, this does not negate the reasonableness of the estate's evaluation of the litigation claims for purposes of evaluating the proposed settlement. Presented with competing but reasonable views of the merits of the FMCC claims, the inherent risk in further litigation strongly supported settlement. Moreover, for our purposes on appeal, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

The same facts referenced above additionally support the bankruptcy court's determination that FMCC's $167,500.00 purchase price constituted fair value for the FMCC claims. We are aware of decisions like *In re Fitzgerald*, 428 B.R. at 883-84, where we held that the bankruptcy trustee's minimal efforts to establish the value of the litigation assets were insufficient. But the holding in *Fitzgerald* was driven in large part by the absence of any assessment of the sale as a compromise under Rule 9019 and any consideration of the *A & C Properties* factors. *Id.* In contrast, both Golden and the bankruptcy court applied all of the factors from *In re A & C Properties* to assess the compromise between Golden and FMCC. And the bankruptcy court found that Golden had satisfied the applicable factors.

Here, Albert-Sheridan's arguments concerning a sale of FMCC's claims is merely a recitation of her argument that Golden settled the claims

20

for too little. But unlike the trustee in *In re Fitzgerald*, the record here reveals an appropriately robust effort by Golden to assess and realize optimal value for the FMCC claims. Golden's efforts included: (1) his retention of special litigation counsel with extensive experience handling automotive industry claims; (2) special counsel's in-depth review of the litigation; (3) his arm's-length negotiations with FMCC including participation in mediation; (4) his informed opinion that the FMCC claims had little merit and value; and (5) his ultimate conclusion that FMCC's offered price was a good deal for the estate. These efforts all set this appeal apart from *In re Fitzgerald*.

In sum, both the bankruptcy court and Golden more than adequately assessed the worth of the FMCC claims. We perceive no reversible error in the bankruptcy court's determination that $167,500.00 was within the range of reasonableness for the sale and settlement of the FMCC claims.

Albert-Sheridan alternately asserts that the claims settled were not property of her bankruptcy estate. Instead, she insists that the claims against FMCC belong to her and not her bankruptcy estate. We disagree. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707–08 (9th Cir. 1986), sets forth the Ninth Circuit's governing law on this matter. Personal injury claims, including those based on intentional infliction of emotional distress, qualify as property of the bankruptcy estate. *Id.* (citing § 541). Furthermore, Golden, as the estate's representative, must liquidate

21

these assets for the benefit of the estate's creditors – as he is bound to do for all estate assets. *See* § 704(a)(1); *see also Crum v. Tomlinson (In re Hettick)*, 413 B.R. 733, 753 (Bankr. D. Mont. 2009) (noting trustee's duty to liquidate estate assets).

Albert-Sheridan's estate property argument hinges on footnote 3 in *Sierra Switchboard*. Footnote 3 states:

> We need not decide whether emotional distress might in some circumstances be so personal to the debtor that it would be undesirable, on public policy grounds, to transfer the property interest to the bankruptcy trustee. *See In re Brooks*, 12 B.R. 22, 24–25 (S.D. Ohio 1981) (debtor cited no public policy reason why Congress could not expand definition of property to include personal injury claim). In the circumstances of this case, we perceive no persuasive public policy rationale.

789 F.2d at 709 n.3.

Based on footnote 3, Albert-Sheridan maintains that her IIED claim is not property of her bankruptcy estate. However, we are not aware of any published decisions from the Ninth Circuit following footnote 3 and holding that a particular emotional distress claim was so personal to the debtor that it should not be considered estate property in spite of the clear mandate of § 541. Indeed, we question whether footnote 3 can be reconciled with later pronouncements of the Supreme Court that we must follow the plain language of a bankruptcy statute when there is no ambiguity as to its meaning and there is no implication of absurd results.

*See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004); *see also Law v. Siegel*, 571 U.S. 415, 421 (2014) (noting that the bankruptcy court's equitable powers are constrained by the specific provisions of the Bankruptcy Code). In any event, as in *Sierra Switchboard*, "[i]n the circumstances of this case, we perceive no persuasive public policy rationale" for excluding the claims against FMCC from the sweeping scope of estate property set forth in § 541.[7]

Albert-Sheridan makes a number of additional arguments. She claims that the bankruptcy court order granting the Motion to Settle was inconsistent with the bankruptcy court's prior order granting FMCC relief from the stay permitting it to litigate the FMCC action. She also claims that Golden did not comply with applicable sale procedures set forth in the Rules and Local Rules. She additionally asserts that notice of the Motion to Settle was inadequate and that the sale wrongfully extinguished the lien of secured creditor Mary McCulley. She further contends that these defects amounted to a denial of due process. However, none of these arguments are supported by the record.[8]

---

[7] Albert-Sheridan also maintains that California law restricts the bankruptcy trustee's right and duty to dispose of the FMCC claims. Again, we disagree. *Sierra Switchboard* stands for the general proposition that no provision of state law prevents personal injury claims from becoming property of the estate or restricts what the trustee can and must do with this estate property to realize its value for the estate's benefit.

[8] Moreover, to the extent Albert-Sheridan attempts to assert rights on behalf of

(continued...)

The only other argument of Albert-Sheridan's we need to mention concerns her claimed exemption in the FMCC action. She contends that the court improperly applied issue and claim preclusion to bar her from relitigating her right to this exemption. The court's preclusion ruling on her exemption claim is the subject of a separate appeal. *See Albert-Sheridan v. Golden (In re Albert-Sheridan)*, BAP No. CC-19-1027-SGTa. In any event, Albert-Sheridan has not identified how the bankruptcy court's exemption ruling is relevant to the court's approval of the Motion to Settle. Nor are we aware of any such relevance.

## CONCLUSION

For the reasons set forth above, the bankruptcy court's order granting the Motion to Settle is AFFIRMED.[9]

---

[8](...continued) secured creditor Mary McCulley, she lacks standing. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

[9] On October 23, 2019, Albert-Sheridan filed a motion to supplement the record on appeal. She sought to include in the record a copy of an October 2, 2019 bankruptcy court order denying her request for a stay pending appeal. This document apparently relates to the parties' dispute over whether this appeal is moot. However, this panel has declined to dispose of this appeal on mootness grounds. The panel previously issued an order denying Golden's motion to dismiss this appeal as moot (BAP No. CC-19-1000, Doc. No. 19 (April 17, 2019)). The October 2, 2019 order is not relevant to our analysis or resolution of this appeal. Accordingly, Albert-Sheridan's motion to supplement the record is ORDERED DENIED.