
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>PRINCESCA N. ENE,<br>　　　　　Debtor. | BAP No. NC-23-1042-SGB<br><br>Bk. No. 21-50901 |
| PRINCESCA N. ENE,<br>　　　　　Appellant,<br>v.<br>GINA R. KLUMP, Chapter 7 Trustee;<br>PATRICE DARISME,<br>　　　　　Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Northern District of California
M. Elaine Hammond, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Princesca N. Ene appeals from an order approving

a compromise under Rule 9019 between chapter 7 trustee Gina R. Klump

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

and Ene's former spouse Patrice Darisme. The compromise resolved a claims dispute between Klump and Darisme regarding Darisme's $5.4 million claim based on a prepetition family court judgment. At the time of the bankruptcy filing, Ene's appeal from the family court judgment was pending ("Family Court Appeal"). The compromise reduced Darisme's claim to $3 million and subordinated it to the claims of Ene's general unsecured creditors. The compromise also resulted in the dismissal with prejudice of the Family Court Appeal. Ene argues that Klump undervalued the Family Court Appeal, which she believes would have decreased Darisme's judgment claim to less than $1 million.

Opposing a Rule 9019 settlement that reduces a creditor's prepetition judgment pending on appeal is an uphill battle. To state the obvious, entry of judgment after a contested trial is conclusive evidence of the creditor's claim unless revised on appeal. Contesting the claim necessarily requires the expenditure of scarce resources and further delays distributions to the estate's creditors. Klump sufficiently explained why she settled the estate's claim objection; the settlement significantly reduced Darisme's judgment and subordinated the claim to the other unsecured creditors' benefit. In making its ruling, the bankruptcy court identified the correct legal standard for assessing the compromise. Ene has not asserted, let alone established, that any of the bankruptcy court's findings were illogical, implausible, or without support in the record. Accordingly, we AFFIRM.

## FACTS[2]

Ene filed her chapter 11 petition in July 2021. In her schedules, she listed a total of $7.1 million in assets and $6.4 million in liabilities. Of the liabilities, Ene listed Darisme as having a disputed judgment claim for $4,591,121.00. Aside from secured debt of $303,391.00, most of Ene's other liabilities consisted of unsecured attorney's fee claims held by a handful of other creditors. She disputed most of the attorney's fee claims.

In September 2021, Darisme filed his proof of claim based on the family court judgment and attached the judgment and amended judgment entered after trial as exhibits. As amended, the proof of claim asserted that the following amounts were owed based on the judgment:

| Description | Citation to amended family court judgment | Amount |
|---|---|---|
| Damages under Cal. Fam. Code § 1101(g) for breach of fiduciary duty | 10:8-9; 12:1 | $2,402,645.70 |
| Attorney's fees | 10:19; 15:22-23 | $176,141.41 |
| Damages under Cal. Fam. Code § 1101(h) for breach of fiduciary duty, with oppression, fraud, or malice | 10:27-28; 12:4 | $1,805,291.50 |
| Sanctions under Cal. Fam. Code § 271 | 11:11; 16:1-3 | $107,043.25 |
| 25% ownership interest in Nano Alloys | 11:17-18 | $785,519.00 |

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

| | | |
|---|---|---|
| Additional award for cash paid from Nano Alloys and paid to Ene | 11:27 | $100,000.00 |
| Fair rental value of residence of $1,933.00 per month from December 1, 2020 to October 1, 2021 | 12:13 | $21,263.00 |
| **Total** | | $5,400,903.86 |

That same month, Darisme commenced a nondischargeability action against Ene. Darisme alleged that some of the amounts the family court awarded in its judgment were nondischargeable under § 523(a)(2), (a)(4), (a)(6), and (a)(15).

In January 2022, the bankruptcy court granted Darisme's motion for appointment of a chapter 11 trustee, who promptly moved to convert the case to chapter 7. In March 2022, the bankruptcy court granted the motion to convert, and Klump was appointed the chapter 7 trustee.

In December 2022, Klump moved for approval of her compromise with Darisme. She simultaneously moved to substantively consolidate into Ene's bankruptcy case certain non-debtor entities that Ene allegedly owned and controlled. According to Klump, the family court judgment indicated that Ene used these non-debtor entities to receive fraudulent transfers of her assets to avoid having to give Darisme his share of the couple's marital assets. Klump additionally contended that Ene used funds putatively held by these entities as if they were her own personal funds.

As for the compromise, Klump explained that her proposed settlement with Darisme would fully and finally resolve their dispute

4

regarding his $5.4 million claim as well as a related lawsuit brought by Nano Alloys, Inc. ("Nano"), one of the entities owned and controlled by Ene subject to the substantive consolidation motion. Nano had asserted claims against Darisme, and Darisme had filed crossclaims against Nano, Ene, and others (collectively, "Nano Litigation").

Under the settlement, the estate would allow Darisme a general unsecured claim in the amount of $3 million against Ene's estate (and against any substantively consolidated entities). In addition to reducing his claim by $2.4 million, Darisme agreed to subordinate his claim to those allowed claims held by all other general unsecured creditors.[3] But Klump stated in her notice of the proposed compromise that allowance of Darisme's claim against the bankruptcy estate would be "without prejudice to his claims as may be determined against the Debtor." As Klump noted, Darisme had previously filed a nondischargeability action against Ene.

As part of the proposed settlement, Klump and Darisme further agreed to stipulate to the dismissal with prejudice of the Family Court Appeal and the Nano Litigation. Additionally, Darisme agreed to consent to substantive consolidation, and Klump acknowledged her statutory duty under § 704(a)(6) to pursue any viable, non-frivolous, and advisable objections to Ene receiving a discharge.

---

[3] There is a reference in the compromise motion to certain subordinated tax penalties. Darisme's allowed claim evidently was not being subordinated to the subordinated tax penalties.

In her declaration in support of the compromise, Klump detailed why the compromise was in the estate's best interests. She explained her belief that the estate held roughly $7 million in assets in various defunct entities, and that Darisme was the primary creditor based on his judgment. Klump maintained that, absent settlement, numerous complex issues would need to be further litigated and would require the services of professionals with family law expertise, thereby engendering substantial additional risk, cost, and delay in administering the chapter 7 estate. Klump stated that child and spousal support, and the issues regarding credits the former spouses might be required to give to each other, would not be resolved by the settlement. These issues would be resolved in the family court. According to Klump, however, the chapter 7 estate would have no post-settlement stake in these issues. They would only affect Ene and Darisme.

As for the allowance of Darisme's claim in the amount of $3 million, Klump and her professionals reviewed the Family Court Appeal and the Nano Litigation. Based on their assessment of the litigation, Klump concluded that allowance of Darisme's claim in the agreed-upon amount of $3 million was both reasonable and beneficial for the estate.

Ene opposed the compromise. First and foremost, she disputed Klump's assessment of the prospects of successful further litigation. Ene had a much more optimistic view of the likely outcome of the Family Court Appeal and the Nano Litigation. She projected that the appeal would lead

6

to reduction of the various sums awarded in the amended family court judgment in the following specific amounts:

| Description | Amended Judgment Amount | Ene's Projected Post-Appeal Amount |
|---|---|---|
| Damages under Cal. Fam. Code § 1101(g) for breach of fiduciary duty | $2,402,645.70 | $0 |
| Attorney's fees | $176.141.41 | $0 |
| Damages under Cal. Fam. Code § 1101(h) for breach of fiduciary duty, with oppression, fraud, or malice | $1,805,291.50 | $887,291.00 |
| Sanctions under Cal. Fam. Code § 271 | $107,043.25 | $107,043.25 |
| 25% ownership interest in Nano Alloys | $788,519.00 | $788,519.00 |
| Additional award for cash paid from Nano Alloys and paid to Ene | $100,000.00 | $0 |
| Fair rental value of residence of $1,933.00 per month from December 1, 2020 to October 1, 2021 | $21,263.00 | Omitted from Ene's projections without explanation |
| **Total** | $5,400,903.86 | $1,782,853.25[4] |

Ene maintained that her projections were supported by the contents of a motion for new trial she prepared and filed seeking to challenge the amended family court judgment. She attached a copy of this motion to her declaration in support of her opposition to the compromise. Among other things, she contended in her new trial motion that there was insufficient evidence of malice to support most of the family court's § 1101(h) award.[5]

---

[4] Ene calculated a different total—$994,334.25—but her total obviously omits the $718,519.00 included in Ene's projections for 25% of Nano Alloys.

[5] Neither the parties' statements nor the record indicate when, whether, or how

Ene raised multiple additional arguments: (1) her projected outcome of the appeal was the only correct one; (2) the proposed compromise only would benefit Darisme; (3) Darisme was not giving anything of value in exchange for the allowance of his claim in the amount of $3 million; (4) she was being deprived of her "day in court" with respect to the Family Court Appeal; (5) because the compromise left unresolved the issues of nondischargeability, spousal support, child support, and when and how each spouse should receive credits for marital property distributed in accordance with the family court's rulings, the compromise complicated rather than simplified the lingering issues for litigation; (6) other general unsecured creditors would be paid in full regardless of the compromise (this argument seems to assume that Ene's view of the prospects for a successful Family Court Appeal would come true); (7) the core issue in the bankruptcy case was a two-party dispute between Ene and Darisme that should be resolved in family court and not by the bankruptcy court; and (8) the compromise failed to balance the estate's interests against Ene's interests. Most of these arguments were not supported by any reference to evidence or law.

In her reply, Klump provided more detail regarding her analysis and assessment of the prospects of prevailing in the Family Court Appeal. First, she pointed out that Ene's calculations effectively acknowledged that

the family court finally disposed of the new trial motion; however, Klump stated that the state court issued a tentative ruling to deny the motion.

Darisme was entitled to no less than $1,782,853.25. Additionally, Klump specifically challenged Ene's premise that Darisme would be denied *any* recovery for her transfer of 50% of the ownership in Nano to third party Wilson Eng.[6] Klump explained that the family court had awarded damages to Darisme for the loss of the community interest in Nano based on Ene's breach of fiduciary duty rather than recovering the loss as an avoidable transfer from Ene. Klump conceded, however, that she believed the community interest was overvalued as it did not account for $3.6 million in tax liabilities. Klump agreed it was likely that the damages awarded to Darisme for the loss of his community interest would be reduced from the $2,402,645.70 awarded to $1,502,645.70.

Klump further rejected Ene's exclusion of any attorney fees, or the reimbursement for monies Ene had taken from Nano, awarded to Darisme in the judgment. Based on her review, and the absence of a reasonable justification by Ene, Klump believed there was no chance that these damages would be reversed on appeal.

Based on her review of the appeal and the related documents, including Ene's new trial motion, Darisme's response thereto, and the family court's tentative ruling denying the new trial, Klump maintained that even after a "successful" appeal, the Darisme claim would end up being allowed in an amount of somewhere between $2,847,513.66 and

---

[6] Eng is one of the named cross-defendants in the Nano Litigation and the alleged recipient of the avoidable transfer of a 50% ownership interest in Nano.

$4,461,640.36. The ultimate amount of Darisme's claim, according to Klump, largely depended on whether some other valuation of the community interest in Nano was required.

Klump also reiterated that the compromise would facilitate the efficient administration of the estate and the substantive consolidation of the non-debtor entities into the bankruptcy case. Klump believed that the compromise ultimately would make it possible to pay in full all general unsecured creditors other than Darisme.

On January 19, 2023, the bankruptcy court held hearings on both the substantive consolidation motion and the compromise motion. The court granted the unopposed substantive consolidation motion for the reasons set forth in the motion.

As for the compromise motion, Ene rested on her papers. Counsel for Darisme represented to the court that he and Klump had spent "significant amounts of time" assessing the merits of the Family Court Appeal "and that is in large part what persuaded the parties to resolve the issue in the way that they have." The bankruptcy court then made its findings of fact and conclusions of law orally on the record. It identified the applicable legal standard set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), which required it to consider the following factors: (1) the prospects of success in the litigation, (2) the difficulty of collecting any resulting judgment, (3) the complexity of the litigation and the attendant expense, inconvenience, and delay associated with it, and

10

(4) the "paramount interest of the creditors," with "proper deference to their reasonable views." *Id.*

The court found that the second factor was inapplicable to this compromise and that all the other *A &C* factors favored approval of the compromise. The court essentially credited Klump's assessment of the litigation and rejected Ene's more optimistic view. Among other things, the court explained that Ene's assessment failed to account for certain awards and issues that necessarily would raise the aggregate amount of the post-appeal judgment claim, even if Klump were to partially prevail on appeal.[7]

As for the complexity of the litigation, the court found that multiple issues were being consensually resolved that otherwise would need to be addressed in the state court litigation. According to the court, litigation of these issues would be inherently expensive. And the need to retain special counsel to represent the estate would take money from the pockets of the estate's creditors.

With respect to the fourth factor—the paramount interest of creditors and deference to their reasonable views—the court observed that no creditors had opposed the compromise and that the only objecting party was Ene. The court additionally opined that capping and subordinating

---

[7] As part of its ruling, the court declined to consider the contents of a late-filed declaration by Adam R. Bernstein filed on January 13, 2023. In addition to being tardily filed, the court noted that it contained non-expert opinion testimony and hearsay. Ene has forfeited any issues related to the exclusion of the Bernstein declaration by not raising them on appeal.

Darisme's claim would enable the other general unsecured creditors to be paid in full. The court further noted that, based on Klump's projections, Darisme's anticipated recovery on its allowed subordinated claim would be closer to $2.7 million than the $3 million allowed.

The court similarly rejected Ene's complaint that the settlement was not a global settlement and offered her no benefit. The court reasoned that the surviving issues such as Darisme's nondischargeability action, spousal support, and child support did not implicate the estate's interests or involve the chapter 7 trustee. It further opined that spousal and child support only could be decided in state court.

On January 27, 2023, the bankruptcy court entered its order approving the compromise. Ene timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion when it approved the compromise between Klump and Darisme.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's compromise order. *Spark Factor Design, Inc. v. Hjelmeset (In re Open Med. Inst., Inc.)*, 639 B.R. 169, 180 (9th Cir. BAP 2022), *aff'd in two separate decisions*, Case No. 22-60017, 2023 WL 7123763, Case No. 22-60018, 2023 WL

12

7122577 (9th Cir. Oct. 30, 2023). The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A. Compromise standards.**

Rule 9019(a) in relevant part provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." To approve a compromise, the bankruptcy court must determine that it is "fair and equitable." *In re Open Med. Inst., Inc.*, 639 B.R. at 180 (citing *In re A & C Props.*, 784 F.2d at 1381). For purposes of Rule 9019, a proposed compromise is considered "fair and equitable" when the bankruptcy court after considering the four *A & C Properties* factors determines that it should approve the proposed compromise. *In re A & C Props.*, 784 F.2d at 1381. Those four factors are:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (citations omitted). When assessing the compromise, a bankruptcy court "need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required." *Burton v.*

*Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997) (citations omitted). "If the court were required to do more than canvass the issue[s], there would be no point in compromising; the parties might as well go ahead and try the case." *In re Open Med. Inst., Inc.*, 639 B.R. at 181 (quoting *Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008)).

As *A & C Properties* explained, "[t]he law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *In re A & C Props.*, 784 F.2d at 1381 (citations omitted). On the other hand, the trustee as the proponent of the compromise bore the burden of demonstrating to the bankruptcy court that the compromise was fair and equitable. *Id.*

## B. Ene's arguments on appeal.

### 1. The settlement does not affect future credits Ene and Darisme may have.

Ene first argues that the compromise should have fully resolved the series of credits provided for in the amended family court judgment. But apart from the claims involving Nano, the settlement left any lingering questions concerning credits associated with the property division between Ene and Darisme to be addressed outside of bankruptcy. Klump was aware of these credits and the surviving litigation issues relating to them. She exercised her business judgment to allow Darisme's claim in the amount of $3 million without attempting to resolve the complex issues arising from

the remaining property division and resulting credits, some of which remained to be determined. As part of the compromise motion proceedings, Klump provided a detailed breakdown of the credits at issue which in total showed aggregate credits potentially owing to Darisme of $2,903,133.85 and aggregate credits potentially owing to Ene of $2,612,484.66. Thus, in the absence of modification of the family court's credit rulings, the net amount of the credits in favor of Darisme would be $290,649.19 ($2,903,133.85 - $2,612,484.66 = $290,649.19). Ene has never challenged Klump's stated amounts.

In her opening appeal brief, Ene complained that the estate's settlement unfairly benefited Darisme to her detriment. Ene explained that the failure to resolve the credits provided "Creditor with a greater recovery than allowed under the Family Court judgment by approving Creditor's claims against the bankruptcy estate but not limiting the claims based on the debit credit system of the Amended Judgment."

We disagree. The compromise only addressed allowance of Darisme's claim for purposes of the trustee's obligation to distribute estate assets to the estate's creditors. It specifically provided that the allowance of Darisme's claim in the amount of $3 million was for purposes of "full and final satisfaction" of his claim against the estate and the entities to be substantively consolidated. Critically, the allowance of his claim against the estate was "without prejudice to his claims as may be determined against the Debtor." This necessarily cuts both ways. The family court's ultimate

15

determination of the net credits will control whether Ene's personal liability increases or decreases. This only matters to the extent that some part of Ene's debt is determined to be nondischargeable. Indeed, the bankruptcy court's compromise order further specifically encapsulated this concept by stating that, "the Settlement Agreement does not address or resolve issues regarding assets not subject to Bankruptcy Court jurisdiction or issues involving discharge of debts between Debtor and Patrice Darisme."[8]

Ene doubtlessly would have preferred to require the estate to litigate on her behalf or assist her in obtaining a better deal that limited her potential exposure for personal liability in the event her debt to Darisme is held to be nondischargeable.[9] But this was not a material concern for the

---

[8] Furthermore, we express no opinion as to the potential preclusive effect in the discharge action of the trustee's dismissal of the family court appeal. *See generally Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 2018 WL 4190874, at *7-8 (9th Cir. BAP Aug. 31, 2018), *aff'd*, 833 F. App'x 116 (9th Cir. 2020).

[9] The record indicates that Ene made no effort to pursue her pending family court appeal after she filed her bankruptcy petition. At oral argument, Ene's counsel was unable to point to anything in the record to suggest that she had sought to further the estate's litigation of the appeal. Though she now makes a passing complaint that she has been denied her "day in court" with respect to her appeal, this is a consequence of her decision to file bankruptcy which divested her of control of the litigation. § 541(a). Moreover, there is nothing to suggest that Ene attempted to acquire the appeal rights or fund the estate's litigation. Rather, Ene left the estate to litigate the appeal and Klump chose to settle it as part of her administration of the estate. *See Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 615 B.R. 572, 587 (9th Cir. BAP 2020), *aff'd*, 852 F. App'x 279 (9th Cir. 2021) (suggesting that debtors might forfeit defensive appeal rights by not seeking to preserve or pursue them while the bankruptcy case is pending but noting that even when debtors take such steps, the debtor's voluntary election to file bankruptcy necessarily puts the appeal rights at risk of being sold or settled by a

chapter 7 trustee or for the bankruptcy court. Klump, and the court, were obliged to put the creditors' interests first. *A & C Properties* describes the interests of creditors as "paramount." *In re A & C Props.*, 784 F.2d at 1381. It additionally requires bankruptcy courts to give due deference to the creditors' views of the settlement and to preserve their rights. *Id.* at 1384. This focus on the creditors' interests necessarily disregards a chapter 7 debtor's complaints that a settlement was neither "fair" to her, nor in her best interest. *Aguina v. Choong-Dae Kang (In re Aguina)*, 2022 WL 325579, at *7 (9th Cir. BAP Feb. 3, 2022), *aff'd*, 2023 WL 195546 (9th Cir. Jan. 17, 2023) ("In the context of a settlement, the trustee and the court must consider the paramount interest of creditors and need not consider the debtor's interest."); *Isom v. Hopkins (In re Isom)*, 2020 WL 1950905, at *7 (9th Cir. BAP Apr. 22, 2020), *aff'd*, 836 F. App'x 562 (9th Cir. 2020).[10]

---

bankruptcy trustee to the ultimate detriment of such debtors).

[10] *Isom* noted that to the extent the bankruptcy estate is solvent, the chapter 7 trustee also owes a fiduciary duty to the debtor. *In re Isom*, 2020 WL 1950905, at *7 n.5. But the mere possibility of a solvent estate does not mean that chapter 7 trustee must pursue litigation of questionable value for a debtor's potential benefit at the creditors' risk and expense. As we explained in *Aguina*:

> All litigation is risky. Plaintiffs settle cases to gain the certainty of recovering something and avoid the risk of recovering nothing. But when the plaintiff is a bankruptcy trustee, creditors and the debtor have different tolerance for litigation risk. The rewards and risks of litigation fall unequally on creditors and debtors, because creditors must get paid in full before the debtor receives any distribution. **Therefore, a settlement that produces money for creditors may be worthless to the debtor**. This means that debtors often want the trustee to pursue risky litigation, rather than settle, in the hope that the recovery will be big enough to pay all

Ene maintains that the primacy of creditors' interests is somehow negated when, as here, creditors of the estate are few. But she has presented no authority to support this novel proposition. Nor are we aware of any.[11]

In short, the court properly considered the benefits of the proposed settlement and did not abuse its discretion by approving the compromise even though it did not resolve Ene's personal liability, or her and Darisme's credits.

### 2.   Ene failed to demonstrate any error with respect to the bankruptcy court's compromise findings.

The bankruptcy court found that Klump's settlement with Darisme obviated the need for Klump to pursue uncertain litigation which was not

---

creditor claims in full and leave something for the debtor. If the gamble does not pay off and the litigation is unsuccessful, the creditors have lost the benefit of the settlement, while the debtor is no worse off (the debtor would have gotten nothing under the settlement and still gets nothing when the litigation fails).

*In re Aguina*, 2022 WL 325579, at *6 (emphasis added).

[11] Ene further believes that the court should have denied approval of the settlement because the issues involved can be characterized as a two-party dispute that must be resolved in state court. The "two-party dispute" argument is typically raised as evidence of the debtor's bad faith supporting dismissal of the bankruptcy. *See, e.g.,* *Liebmann v. Goden*, 629 F. Supp. 3d 314, 323–24 (D. Md. 2022), *aff'd sub nom.*, *Rullan v. Goden*, 2023 WL 4787463 (4th Cir. July 27, 2023) (chapter 7 case); *Angelo v. Touch Worldwide Holdings Ltd. (In re Angelo)*, 580 B.R. 862, 866–67 (W.D. Wash. 2017) (chapter 13 case); *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 616–17 (9th Cir. BAP 2014) (chapter 11 case). Ene's contention, even if true, in no way justifies impeding the chapter 7 trustee's administration of the bankruptcy estate.

likely to prove as successful as Ene hoped. The court specifically found that such litigation would be expensive and would delay the administration of the estate. In contrast, the proposed settlement was likely to result in full payment of all general unsecured creditors other than Darisme. This led the court to conclude that the proposed settlement was in the best interest of the estate's creditors.

Ene disagrees with these findings. She claims that the benefits to the creditors are illusory and that the harm to her is real because continued litigation with Darisme necessarily would have led to reduction of Darisme's allowed claim to less than $1 million. But Ene has done nothing to explain or demonstrate why the bankruptcy court's decision was clearly erroneous. Ene has failed to show why the court's reliance on Klump's litigation assessment over her own was illogical, implausible, or without support in the record. Neither appellant's mere disagreement with the bankruptcy court's findings, nor the existence of some conflicting evidence are sufficient to establish clear error. *Valente v. Nowland (In re Valente)*, 2023 WL 3270877, at *8 (9th Cir. BAP May 5, 2023); *Haig v. Shart (In re Shart)*, 2014 WL 6480307, at *13, 15-18 (9th Cir. BAP Nov. 19, 2014). Put differently, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

Klump sufficiently established that creditors' interests would be best served by the settlement with Darisme and that the allowance of his claim

in the amount of $3 million was fair and equitable under the circumstances. Indeed, the settlement materially incorporated much of the proposed benefits of the appeal and materially reduced the estate's liability. Nothing Ene has said in the bankruptcy court or on appeal demonstrates that the bankruptcy court clearly erred in rendering its findings in support of approving the compromise. As a result, we reject Ene's argument to the extent it challenges the bankruptcy court's compromise findings.[12]

Ene voluntarily chose to commence a bankruptcy case. The case was duly converted to chapter 7. Put bluntly, in exchange for the benefits and protections of bankruptcy, Ene accepted the risk that her assets would be liquidated for the benefit of her creditors. As the chapter 7 trustee, Klump was statutorily obligated to liquidate the estate's assets and administer them for the benefit of creditors. *See* §§ 704(a)(1), 726. Klump necessarily controlled the administration of the estate's assets, including pending appeals and the decision whether to pursue such appeals or consensually resolve them. Ene, therefore, is in no position to complain of the perceived unfairness of the trustee's resolution of her defensive appeal within the administration of the chapter 7. *See In re Delannoy*, 615 B.R. at 584, 587.

---

[12] Ene alternately argues that the bankruptcy court erred in approving the compromise because it was not a global settlement of all issues and failed to resolve the credits issues, spousal support, or child support. She further asserts that the negative effect of the settlement on her so dwarfs and outweighs any benefit to the estate that the court should not have approved the compromise. These arguments are nothing more than variations of the points addressed and rejected above. They fail for the same reasons.

The settlement between the bankruptcy estate and Darisme efficiently resolved outstanding issues and claims that Klump reasonably concluded had varying chances of success. The settlement further avoided time and costs while materially reducing the creditor's judgment amount and ensuring payment in full of other creditors. Ene does not legitimately argue otherwise. Under these circumstances, Ene's belief that she was adversely affected by the compromise is of little or no moment.

## CONCLUSION

For the reasons set forth above, we AFFIRM.